[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist.,* Slip Opinion No. 2016-Ohio-5026.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5026

THE STATE EX REL. SCHOOL CHOICE OHIO, INC. *v.* CINCINNATI PUBLIC SCHOOL DISTRICT ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist.,* Slip Opinion No. 2016-Ohio-5026.]

*Public records—R.C. 149.43—Requestor has clear legal right to access personally identifiable information of school district's students whose parents had consented to release of the information—Requestor failed to establish clear legal right to compel district to amend its student-information policy—Writ of mandamus granted in part and denied in part.*

(No. 2014-0749—Submitted January 26, 2016—Decided July 21, 2016.)

IN MANDAMUS.

_____

**LANZINGER, J.**

{¶ 1} This is a mandamus action in which a company seeks to compel a school district to comply with a public-records request. We grant the request for a writ of mandamus in part and deny it in part.

## RELEVANT BACKGROUND

{¶ 2} Relator, School Choice Ohio, Inc. ("School Choice"), is a private, nonprofit corporation that informs Ohio parents about alternative educational opportunities for their children, including publicly funded scholarships to attend private schools. It provides this information by contacting parents via telephone, e-mail, or mail. School Choice obtains the students' contact information by submitting public-records requests to Ohio public school districts.

{¶ 3} Respondent, Springfield City School District ("Springfield" or "the district"),[1] is a public school district that includes one preschool, ten elementary schools, three middle schools, one high school, and one alternative school. In compliance with federal and state law, Springfield maintains extensive educational and personal information about its students. Pursuant to federal and state privacy laws, Springfield has an official policy in place to safeguard its students' private information.

{¶ 4} For the 2012-2013 school year, Springfield's policy provided notice that some student information would be designated as "directory information" and that prior parental consent to the disclosure of this information would be presumed. The policy deemed the following nine categories of student information "directory information": (1) name, (2) address, (3) telephone number(s), (4) date and place of birth, (5) participation in officially recognized activities and sports, (6) achievement awards or honors, (7) weight and height, if a member of an athletic team, (8) dates of attendance, and (9) date of graduation. The policy also informed parents that

---

[1] School Choice's claims against the other respondent, Cincinnati Public School District, were dismissed after those parties entered into a settlement agreement.

2

unless they "affirmatively withdr[ew] their consent to release in writing," the district would be free to release the directory information to requesting parties without prior written consent.

{¶ 5} In January 2013, School Choice sent a public-records request to Springfield, asking the district to provide information regarding students enrolled in the district during the 2012-2013 academic year. The request specifically asked for the following information:

1. Student and Parent's/Guardian's Name,
2. Parent's/Guardian's complete address, including e-mail address,
3. Parent's/Guardian's telephone contact information, and
4. Student's Grade Level for the 2012-13 School Year.

Springfield complied with the request in part. In its letter responding to School Choice's request, the district explained that it would release only information that its 2012-2013 policy explicitly designated as directory information, which did not include students' grade levels or parents' personal information. Springfield therefore provided to School Choice only the names and addresses of enrolled students.

{¶ 6} For the 2013-2014 school year, the district changed its student-information policy. It designated the same nine categories of student information as "directory information" but stated that the designation applied only to former students and not to current students. For current students, Springfield provided parents with a form entitled "Consent for Disclosure of Student Information for Superintendent Approved Purposes" (the "consent form"). The consent form listed the same nine categories of information that the prior policy had designated as "directory information" but identified the list as "personally identifiable information." The consent form informed parents that their written consent was

now required in order for Springfield to release the student information falling into the nine categories. But once given, parental consent would be implied on a continuing basis unless the parents affirmatively withdrew their consent in writing. Thus, under the updated policy, the same student information was subject to the same ongoing release, though the information bore a different label and affirmative parental consent was initially required.

{¶ 7} Additionally, the new consent form specified categories of requesters who would be eligible to receive student information. The form provided that student information could be subject to disclosure only "for purposes approved by the Superintendent or his designee." It identified two categories of approved purposes: (1) school-directed events or activities, such as yearbook publication or theater presentations, and (2) "educational, health, service, or other non-profit programs which may provide a benefit to the students of the District" that are directed in part or in full by third-party "community leaders, community organizations, and school-related organizations" approved by the superintendent as "partnering" organizations.

{¶ 8} In October 2013, School Choice sent another public-records request to Springfield. This request sought the following information:

1. Student and parent's/guardian's name,
2. Parent's/Guardian's complete address, including email address,
3. Parent's/Guardian's telephone contact information,
4. Student's grade level for the 2013-14 school year, and
5. Student's school building for the 2013-14 school year.

In a reply e-mail, without specifying whether it was accepting or rejecting School Choice's request, Springfield attached a copy of the new student-information policy that it had adopted for the 2013-2014 school year. After School Choice sent a letter

4

following up on its request, Springfield eventually articulated in January 2014 that it was categorically denying the request based on the new student-information policy. But on other occasions during the same school year, the district released students' personally identifiable information to other organizations, including Clark State Community College, Springfield Christian Youth Ministries, Global Impact STEM Academy, Jostens, Inc., and the Clark County Combined Health District.

{¶ 9} In a May 2014 complaint, amended in October 2014 after the claims against Cincinnati Public School District were dismissed, School Choice sought a writ of mandamus compelling Springfield to produce the 2013-2014 student information requested in October 2013 and to amend Springfield's student-information policy, including the parental notice-and-consent procedure. In the first and second counts[2] against Springfield, School Choice asserted that it was entitled to the information under Ohio's Public Records Act, R.C. 149.43, and Student Privacy Act, R.C. 3319.321. In the third count, School Choice asserted that it was entitled to the requested relief regarding Springfield's student-information policy pursuant to Ohio's Student Privacy Act and Public Records Act as well as the Family Educational Right to Privacy Act ("FERPA"), 20 U.S.C. 1232g. School Choice also requested an award of statutory damages, attorney fees, and costs.

{¶ 10} We issued an alternative writ in December 2014, 140 Ohio St.3d 1519, 2014-Ohio-5251, 20 N.E.3d 728, and the parties presented evidence, filed

---

[2] The first, second, and third count against Springfield are counts two, four, and six of the amended complaint. The remaining counts relate to the dismissed respondent, Cincinnati Public School District, and will not be addressed.

briefs, and gave oral arguments. The cause is now before us for consideration of the merits.[3]

## LEGAL ANALYSIS

### I. Access to Student Information through the Public Records Act

{¶ 11} The first count of the complaint for a writ of mandamus seeks to compel Springfield to release under R.C. 149.43 the student information that School Choice requested in its 2013-2014 public-records request. "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. *Accord* R.C. 149.43(C)(1). To be entitled to a writ of mandamus compelling the production of public records, a relator must establish by clear and convincing evidence that the relator has a clear legal right to the records and that the respondent has a clear legal duty to provide them. *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. The respondent, in turn, has the burden of proving that the records are exempt from disclosure under R.C. 149.43. *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988), paragraph two of the syllabus.

{¶ 12} The policy underlying the Public Records Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. Therefore, R.C. 149.43 must be construed "liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel.*

---

[3] Springfield argues for the first time in its merit brief that mandamus is not appropriate here because School Choice has named the wrong party and Springfield lacks the capacity to be sued. Civ.R. 9(A) requires parties to claim lack of capacity by " 'specific negative averment,' " or else the matter is waived. *State ex rel. Downs v. Panioto*, 107 Ohio St.3d 347, 2006-Ohio-8, 839 N.E.2d 911, ¶ 30, quoting Civ.R. 9(A). Because Springfield failed to raise its lack of capacity in its answers to School Choice's complaint and amended complaint, it has waived the argument and we will not consider it.

*Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996). And exceptions to disclosure must be strictly construed. *State ex rel. Thomas v. Ohio State Univ.*, 71 Ohio St.3d 245, 247, 643 N.E.2d 126 (1994).

{¶ 13} The first step in considering the merits of School Choice's public-records request is to determine whether the information requested meets the definition of "public record." Generally, to constitute a public record, a document must be a record and it must be "kept by any public office." R.C. 149.43(A)(1). Springfield is a public office, given that "school district units" are specifically enumerated in the statutory definition of public offices. *Id. See also State ex rel. Perrea v. Cincinnati Pub. Schools*, 123 Ohio St.3d 410, 2009-Ohio-4762, 916 N.E.2d 1049, ¶ 14. To be a "record," the personally identifiable student information that Springfield maintains must be of a nature that "serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G).

{¶ 14} School districts are required by law to collect the personally identifiable information of all their students and to compile the information in a variety of forms: districts must collect student information, including names and addresses, and a variety of data for demographic and funding purposes, R.C. 3301.0714(D)(1); district superintendents must keep uniform records regarding all enrolled students, including names, studies pursued, and standing, R.C. 3319.32; and reports of student names, ages, and addresses must be provided to the school district board of education, R.C. 3321.12. Because a school district's maintenance of student information is one of its integral functions, the records containing personally identifiable student information that Springfield maintains are records within the meaning of R.C. 149.011(G).

{¶ 15} Although school districts are public offices and the records containing students' personally identifiable information are records for purposes of R.C. 149.011(G), they are not public records if they fall under one of the exceptions

enumerated in R.C. 149.43(A)(1), one of which is "[r]ecords the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). Springfield contends that the records containing students' personally identifiable information are records prohibited from release by federal and state law. Specifically, the school district asserts that release of the information is prohibited by FERPA and R.C. 3319.321 and that therefore the information is not a public record.

{¶ 16} Both the federal and state statutes must be considered.

### A. Prohibition by Federal Law

{¶ 17} FERPA was enacted to protect the privacy rights of students and their parents " 'by limiting the transferability of their records without their consent.' " *Gonzaga Univ. v. Doe*, 536 U.S. 273, 295, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), quoting 120 Cong.Rec. 39858, 39862 (1974). The receipt of federal education funds by Ohio's schools and education agencies, including Springfield, is conditioned on their compliance with the privacy provisions of FERPA. *State ex rel. ESPN, Inc. v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 19. If FERPA restrictions apply to a particular record, the release of the record is prohibited by federal law under R.C. 149.43(A)(1)(v). *Id.* at ¶ 25.

{¶ 18} FERPA broadly prohibits the release of education records but provides a variety of exceptions to this prohibition. The only exception applicable to this dispute is the exception for directory information. Thus, education entities may not have "a policy or practice of permitting the release of education records (or personally identifiable information contained therein *other than directory information*, * * *) of students without the written consent of their parents." (Emphasis added.) 20 U.S.C. 1232g(b)(1).

{¶ 19} FERPA defines "directory information" as including the following:

Student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities

8

and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.

20 U.S.C. 1232g(a)(5)(A).

{¶ 20} Springfield asserts that because it no longer calls its nine categories of student information "directory information," none of the FERPA provisions related to directory information apply. This argument is not well taken. While it is true that FERPA affords school districts the choice whether to "*mak[e] public directory information*" (emphasis added), 20 U.S.C. 1232g(a)(5)(B), it does not afford them discretion to change the categories that fit within the term "directory information" as defined in 20 U.S.C. 1232g(a)(5)(A). *See United States ex rel. Munoz v. Computer Sys. Inst., Inc.*, No. 11 C 7899, 2015 WL 4052853, *2 (N.D.Ill. June 30, 2015), quoting *Electronic Privacy Information Ctr. v. U.S. Dept. of Edn.*, 48 F.Supp.3d 1, 20 (D.D.C.2014) (" 'Under FERPA, each educational institution can choose whether to make the various categories of directory information public or not' ").

{¶ 21} A school district may release directory information without obtaining parental consent for every request as long as it satisfies three conditions provided in 20 U.S.C. 1232g(a)(5)(B). First, the school district must choose which of the eligible categories of directory information to "mak[e] public." *Id.* Second, the school district must give public notice identifying its chosen categories of information and its intended ability to release the information without prior parental consent. *Id.* Third, the school district must allow parents an opportunity to opt out by withdrawing their consent. *Id.* Parental consent is the key to whether information can be released without violating FERPA.

{¶ 22} Application of FERPA's directory-information exception to this case requires consideration of two aspects of Springfield's notice-and-consent

procedure: (1) its initial-consent option and (2) its limitation of disclosure to specific parties and for specific purposes.

### 1. Parental notice and consent: initial-consent option

{¶ 23} Under the terms of Springfield's 2013-2014 policy, the district chose to designate nine categories of student information—all of which fit the statutory definition of directory information—as subject to release. The district notified parents that it intended to disclose the information in response to future requests without obtaining additional parental consent at the time of disclosure. But instead of presuming parents' initial consent and allowing them to opt out, the district asked parents to give their initial written consent to this process. Springfield's notice-and-consent procedure thereby satisfied the first two conditions of 20 U.S.C. 1232g(a)(5)(B) and partially satisfied the third.

{¶ 24} Because Springfield did not notify parents that their consent would be presumed unless they opted out, Springfield would violate FERPA by releasing the directory information of any students whose parents had failed to sign the consent form. But Springfield would not violate FERPA by releasing personally identifiable information of students whose parents *had* signed the consent form.

### 2. Parental notice and consent: specific parties and purposes

{¶ 25} FERPA's provisions regarding directory information, 20 U.S.C. 1232g(a)(5)(A) and (B), identify the information that may be released without parental consent, but the provisions are silent regarding the parties who are eligible to receive the information. Further guidance, however, is provided in 34 C.F.R. 99.1 et seq., which "set[s] out requirements for the protection of privacy of parents and students" pursuant to FERPA. 34 C.F.R. 99.2. The regulation governing directory information, 34 C.F.R. 99.37, provides:

> In its public notice to parents * * *, an educational agency or
> institution may specify that disclosure of directory information will

be limited to specific parties, for specific purposes, or both. When an educational agency or institution specifies that disclosure of directory information will be limited to specific parties, for specific purposes, or both, the educational agency or institution *must limit* its directory information disclosures to those specified in its public notice * * *.

(Emphasis added.) 34 C.F.R. 99.37(d).

{¶ 26} Pursuant to this regulation, a school district has the power to adopt policies and use consent forms that limit the scope of disclosure to specific parties or for specific purposes. But if a district provides such limitations, disclosing student-directory information to parties or for purposes that are outside the scope of the notice given to parents would violate FERPA. *Id.* Again, parental notice and consent is the key factor.

{¶ 27} The relevant portion of Springfield's consent form limits disclosure to "community leaders, community organizations, and school-related organizations" involved in "educational, health, service, or other non-profit programs which may provide a benefit to the students of the District." Releasing student-directory information to parties or for purposes that are outside the scope of these limitations would violate FERPA. But as a nonprofit organization whose mission is to inform parents about the full range of educational opportunities available to students in Ohio, School Choice easily fits the description of a community or school-related organization involved in an educational or other nonprofit program that could provide a benefit to the students of Springfield. Accordingly, given the language in Springfield's consent form, FERPA would not prohibit Springfield's release of student-directory information to School Choice under the foregoing limitation.

{¶ 28} Springfield also argues that the consent form limits its ability to disclose student information to "partnering" organizations and "for purposes approved by the Superintendent or his designee." Through this argument, Springfield implies that if the superintendent does not want to partner with a requesting organization or approve of the purpose involved, it would violate FERPA to release student-directory information to that organization. Not so.

{¶ 29} Allowing the superintendent to make discretionary limitations *after* consent has been given does not limit the scope of parental consent. It therefore would not violate FERPA for the superintendent to approve any party or purpose, as long as disclosure to that party or for that purpose "may provide a benefit to the students of the District," as the consent form requires. Because School Choice fits within the limitations specified in Springfield's consent form and because the superintendent cannot create a FERPA prohibition by making post-consent discretionary decisions, disclosure of Springfield's student-directory information to School Choice would not be prohibited by FERPA.

{¶ 30} In sum, after considering the two foregoing aspects of Springfield's parental notice-and-consent procedure, we conclude that FERPA's directory-information exception applies to the information of students whose parents had signed the consent form. Release of these students' information pursuant to Springfield's policy in response to School Choice's request is not prohibited by federal law.[4]

### B. Prohibition by State Law

{¶ 31} Ohio's Student Privacy Act, R.C. 3319.321, was enacted to bring the state's public schools into compliance with FERPA. 1987 Ohio Atty.Gen.Ops. No.

---

[4] We observe that a portion of School Choice's 2013-2014 request seeks information that does not fall within the nine categories of personally identifiable student information enumerated in Springfield's policy and consent form. Disclosure of this information, being outside the scope of 20 U.S.C. 1232g(a)(5)(A), would violate FERPA, and it is not a public record as defined by R.C. 149.43(A)(1)(v).

87-037, at 2-255; *see also* Ohio Legislative Service Commission, Summary of 1976 Enactments, January-July, at 87 (summary of Am.S.B. No. 367).

{¶ 32} The state law bears many similarities to its federal counterpart, and although it does not explicitly include many of the detailed requirements present in FERPA, it incorporates by implication FERPA's directory-information provisions. *See* R.C. 3319.321(B)(2)(a). Ohio law's only prohibition on the release of directory information that is in addition to the FERPA prohibitions is found in R.C. 3319.321(A), which prohibits school districts from releasing directory information if it is "for use in a profit-making plan or activity." R.C. 3319.321(A).

{¶ 33} The parties do not dispute that School Choice does not intend to use the requested information in a profit-making plan or activity. Because the Student Privacy Act prohibition against the release of student information for profit-making purposes does not apply to School Choice, state law does not prohibit the release of the requested information.

{¶ 34} In the absence of any prohibition on the disclosure under either federal or state law, the Public Records Act exception set forth at R.C. 149.43(A)(1)(v) is inapplicable. Therefore, the personally identifiable information of Springfield's students whose parents had provided written consent is a public record subject to disclosure pursuant to R.C. 149.43.

## II. Access to Student Information through R.C. 3319.321

{¶ 35} The second count against Springfield in School Choice's mandamus complaint contends that even if R.C. 149.43 were inapplicable, Springfield is independently obligated under Ohio's Student Privacy Act to release any student information that it has already provided to other third parties. School Choice contends that it has a right to the same 2013-2014 student information that was provided to third parties, including Clark State Community College, Springfield Christian Youth Ministries, Global Impact STEM Academy, Jostens, Inc., and the Clark County Combined Health District.

**{¶ 36}** To be entitled to the writ on this basis, School Choice must establish that the Student Privacy Act provides School Choice with a clear legal right to the requested information, imposes a clear legal duty on Springfield to provide it, and does not allow for an adequate remedy in the ordinary course of the law. *State ex rel. Brown v. Lemmerman*, 124 Ohio St.3d 296, 2010-Ohio-137, 921 N.E.2d 1049, ¶ 9.

**{¶ 37}** The Student Privacy Act provides no statutory mechanism for the enforcement of its terms, and we have recognized that mandamus is an appropriate vehicle to compel compliance. *Id.* at ¶ 12. In an attempt to establish a clear legal right and corresponding duty under the Student Privacy Act, School Choice cites the following provision:

> [N]o school district board of education shall impose any restriction on the presentation of directory information that it has designated as subject to release in accordance with the "Family Educational Rights and Privacy Act of 1974," 88 Stat. 571, 20 U.S.C. 1232q [sic, 1232g], as amended, to representatives of the armed forces, business, industry, charitable institutions, other employers, and institutions of higher education unless such restriction is *uniformly imposed* on each of these types of representatives.

(Emphasis added.) R.C. 3319.321(B)(2)(a).

**{¶ 38}** School Choice contends that this language means that "a school district cannot impose any burden on the release of information that qualifies as 'directory information' unless it imposes that same burden on all third parties." But the foregoing provision does not reach all third parties. It applies only to "representatives of the armed forces, business, industry, charitable institutions,

*other employers*, and institutions of higher education." (Emphasis added.) R.C. 3319.321(B)(2)(a).

{¶ 39} The reach of this language can be determined by its plain meaning, construed according to the rules of grammar and common usage. *State ex rel. Antonucci v. Youngstown City School Dist. Bd. of Edn.*, 87 Ohio St.3d 564, 565, 722 N.E.2d 69 (2000). The placement of the term "other employers" in a separate clause indicates that it is a catchall provision that supplements the list preceding it. *See State ex rel. Gyurcsik v. Angelotta*, 50 Ohio St.2d 345, 346, 364 N.E.2d 284 (1977). *See also Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 499 Fed.Appx. 559, 564 (6th Cir.2012), quoting 82 Corpus Juris Secundum, Statutes, Section 443, at 572 (" 'The presence of a comma separating a modifying clause in a statute from the clause immediately preceding it is an indication that the modifying clause was intended to modify all the preceding clauses * * *' "). Accordingly, other than representatives of "institutions of higher education," the statutory provision addresses representatives of employers, including "the armed forces, business, industry," and "charitable institutions."

{¶ 40} Even if the language of R.C. 3319.321(B)(2)(a) were ambiguous, the legislative history and stated purpose of the language point to the same conclusion. When subdivision (B)(2) was added to R.C. 3319.321 in 1987, the preamble stated that the purpose of the amendment was to prohibit school districts "from imposing any restriction on the presentation of *career information* to students" and to ensure uniform release of student-directory information to entities related to that goal. (Emphasis added.) Am.S.B. No. 75, 142 Ohio Laws, Part I, 151. *See also* Ohio Legislative Service Commission, 1987 Summary of Enactments, January-August, at 107-108 (summary of Am.S.B. No. 75) ("restrictions on the presentation of career information" must be "uniformly imposed on representatives of the armed forces, employers, and institutions of higher education," and "restrictions on the release of student directory information [must] be uniformly imposed on these same

types of representatives"). Given the stated purpose behind adding R.C. 3319.321(B)(2) to the Student Privacy Act, we conclude that the uniform-restriction rule applies only to entities that seek to employ students and to institutions of higher education. Neither of these categories applies to School Choice; it is not a prospective employer or an institution of higher education, and although School Choice promotes the opportunity to learn about education institutions, those institutions serve students in grades kindergarten through 12. *Compare* R.C. 3310.03 (the educational-choice scholarship program applies only to students in grades kindergarten through 12) *with* R.C. 3345.12(A)(2) ("higher education" refers to colleges and universities).

{¶ 41} Moreover, School Choice provides no argument to establish that it fits within the categories of representatives listed in R.C. 3319.321(B)(2)(a). School Choice has the burden of proving its right to the requested relief by clear and convincing evidence. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 13. By failing to provide any argument—let alone evidence—that it fits within the categories of representatives listed in R.C. 3319.321(B)(2)(a), School Choice cannot establish that it has a clear legal right to student records pursuant to Ohio's Student Privacy Act.

{¶ 42} Because School Choice cannot satisfy any element of its mandamus claim premised on R.C. 3319.321, we deny the writ with respect to this count.

### III. Amendments to Springfield's Student-Information Policy

{¶ 43} In its third count against Springfield, School Choice seeks to compel Springfield to amend its student-information policy—i.e., to change its definition of "directory information" and to change its notice-and-consent procedure—so that its policy requires the disclosure of the requested student information to the company. School Choice relies on rights and duties that it purports are provided under Ohio's Public Records Act and Student Privacy Act—and indirectly under FERPA.

**{¶ 44}** As discussed in our above analysis of School Choice's second count against Springfield, the company has not established a clear legal right to any relief under the Student Privacy Act. The appropriate relief under the Public Records Act would be the disclosure of records, which we already granted in part with respect to School Choice's first count against Springfield. Finally, as we have explained above, neither FERPA nor 34 C.F.R. 99.37(d) require Springfield to allow all third parties to access its student-directory information. And FERPA does not convey any private rights to third parties like School Choice. *Gonzaga Univ.*, 536 U.S. at 287, 122 S.Ct. 2268, 153 L.Ed.2d 309 ("FERPA's nondisclosure provisions fail to confer enforceable rights"); 34 C.F.R. 99.60 et seq. (FERPA is enforced through administrative action).

**{¶ 45}** School Choice cannot establish a clear legal right to this separately requested relief. We therefore deny the writ with respect to School Choice's third count against Springfield.

### IV. Fees, Damages, and Costs

**{¶ 46}** Because we are granting the writ in part and ordering compliance with a portion of School Choice's request pursuant to the Public Records Act, R.C. 149.43(C)(1) requires an award of $100 for each business day that Springfield withheld the information requested, up to a maximum of $1,000. And because School Choice complied with the requirements of R.C. 149.43(C)(1) in bringing its action, we are required by R.C. 149.43(C)(2)(a) to award court costs. Finally, we find that Springfield did not provide a timely affirmative or negative response to School Choice's October 2013 public records request and that School Choice is entitled to a mandatory award of attorney fees under R.C. 149.43(C)(2)(b)(i). *See State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136 ("the absence of any response over a *two-month period* constitutes a violation of the 'obligation in accordance with division (B)' to respond 'within a reasonable period of time' per R.C. 149.43(B)(7)" [emphasis sic]). Although it is within our

discretion to reduce the statutory damages award pursuant to R.C. 149.43(C)(1)(a) and (b) and to reduce the award of attorney fees pursuant to R.C. 149.43(C)(2)(c), we decline to do so in this case.

{¶ 47} We therefore grant $1,000 in statutory damages and costs and attorney fees associated with School Choice's mandamus action requesting relief pursuant to Ohio's Public Records Act. School Choice must provide the court with a detailed application for reasonable attorney fees and costs to be awarded pursuant to R.C. 149.43(C).

## CONCLUSION

{¶ 48} We hold that School Choice has a clear legal right to access the personally identifiable information of Springfield's students whose parents had consented to the release of the information. We also hold that School Choice failed to establish a clear legal right to compel Springfield to amend its student-information policy.

{¶ 49} Accordingly, we grant in part and deny in part the complaint for a writ of mandamus. Springfield is ordered to provide the records requested by School Choice that pertain to students whose parents had signed Springfield's consent form and that fall within any of the nine categories of personally identifiable information identified in Springfield's consent form. We award costs, statutory damages, and attorney fees, the total amount of which will be determined pending School Choice's itemized application.

Judgment accordingly.

PFEIFER, KENNEDY, and O'NEILL, JJ., concur.

O'DONNELL, J., concurs in judgment in an opinion that FRENCH, J., joins.

O'CONNOR, C.J., concurs in part and dissents in part in declining to award attorney fees.

_____

18

**O'DONNELL, J., concurring.**

{¶ 50} I agree with the majority that the personally identifiable information of students of the Springfield City School District ("Springfield or "the district") whose parents have provided written consent to disclose that information is a public record subject to disclosure pursuant to R.C. 149.43, that School Choice Ohio, Inc. ("School Choice") failed to prove its mandamus claim premised on R.C. 3319.321(B)(2)(a), that School Choice did not establish a clear legal right to compel Springfield to amend its student information policy, and that School Choice is entitled to statutory damages, costs, and attorney fees. However, in my view, the reason that R.C. 3319.321(B)(2)(a) does not apply is because it precludes a school district board of education from imposing "any restriction on the presentation of directory information that it has designated as subject to release in accordance with the 'Family Educational Rights and Privacy Act of 1974,' 88 Stat. 571, 20 U.S.C. 1232q [sic, 1232g], as amended" to representatives of certain entities and Springfield had not so designated the information at issue.

{¶ 51} Instead of following the procedure set forth in 20 U.S.C. 1232g(a)(5)(B) to make directory information available to the public, i.e., designating categories of public directory information, giving public notice of the categories of information so designated, and giving parents a reasonable time to opt out and inform the district that any or all of the designated information should not be released without prior parental consent, Springfield created a policy whereby certain categories of student information could, with prior written parental consent, be disclosed to third parties "for purposes approved by the Superintendent or his designee." One approved purpose was the release of information to partnering "community leaders, community organizations, and school-related organizations" involved in "educational, health, service, or other non-profit programs which may provide a benefit to the students of the District."

{¶ 52} The majority aptly observes that

as a nonprofit organization whose mission is to inform parents about the full range of educational opportunities available to students in Ohio, School Choice easily fits the description of a community or school-related organization involved in an educational or other nonprofit program that could provide a benefit to the students of Springfield.

Majority opinion at ¶ 27. Nonetheless, the superintendent exercised his discretion to deny the request of School Choice for student information even though he granted requests made by other entities, such as Clark State Community College, Springfield Christian Youth Ministries, Global Impact STEM Academy, the Clark County Combined Health District, Jostens, Inc., and the Miami Valley Educational Computer Association.

{¶ 53} " 'An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude.' " *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 12, quoting *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 80 Ohio St.3d 302, 305, 686 N.E.2d 238 (1997).

{¶ 54} Here, the superintendent had no rational basis for treating School Choice differently than the entities to which he released student information. According to the superintendent, the district had no partnership with School Choice whereby it could be certain that School Choice "would include any of the opportunities offered by Springfield in the information it disseminated to students" or "ensur[e] the accuracy of the information dispensed." However, the district cannot ensure the accuracy of information dispensed to students by any outside organization, and the policy created by Springfield focuses on the possible benefit to the students from the release of their personal information—not the benefit to

the district. Accordingly, in my view, the superintendent acted unreasonably and abused his discretion when he denied the request of School Choice.

**{¶ 55}** Moreover, the superintendent's release of student information to other entities operated as a waiver of the right to claim that the information was excepted from disclosure pursuant to the public records law. *See State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 22 ("Voluntarily disclosing the requested record can waive any right to claim an exemption to disclosure"). School Choice is therefore entitled to the student information pursuant to the Public Records Act.

FRENCH, J., concurs in the foregoing opinion.

_____

McDonald Hopkins, L.L.C., David T. Movius, Matthew J. Cavanagh, and Mark J. Masterson, for relator.

Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere, and Scott A. Sollmann; and Martin, Browne, Hull & Harper, P.L.L., and Karen W. Osborn, for respondent.

Isaac, Wiles, Burkholder & Teetor, L.L.C., Mark Landes, and Mark H. Troutman, urging denial of the writ for amici curiae Ohio School Boards Association, Buckeye Association of School Administrators, and Ohio Association of School Business Officials.

_____