STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RENEE McCONNELL, et al. | ) | CASE NO. 17 MA 0045 |
| | ) | |
| PLAINTIFFS-APPELLEES | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| DONALD C. DUDLEY, JR., et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
Pleas of Mahoning County, Ohio
Case No. 15 CV 2460

JUDGMENT:      Affirmed in part.
Reversed in part.

APPEARANCES:

For Plaintiffs-Appellees:      Atty. Ryan J. Melewski
Atty. Mark A. Rafidi
Rafidi, Pallante & Melewski, LLC
105 N. Broad Street
Canfield, Ohio  44406

For Defendants-Appellants:      Atty. Gregory A. Beck
Baker, Dublikar, Beck, Wiley
 & Mathews
400 South Main Street
North Canton, Ohio  44720

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  January 26, 2018

WAITE, J.

**{¶1}** Appellants Donald C. Dudley Jr., Coitsville Township Police Department, and Coitsville Township/Coitsville Board of Township Trustees appeal a February 16, 2017 decision of the Mahoning County Common Pleas Court denying their motion for summary judgment in this matter. Appellants collectively argue that they are entitled to immunity arising from an accident caused by a police pursuit. Appellants also contend that the Coitsville Police Department is not subject to being sued in this case. For the reasons provided, Appellants' arguments as to the Coitsville Township Police Department and Coitsville Township are without merit and the judgment of the trial court is affirmed as to those issues. However, Appellants' argument as to Officer Dudley's individual liability has merit and the judgment of the trial court is reversed on that issue.

### Factual and Procedural History

**{¶1}** Around 8:00 a.m. on September 18, 2013, Officer Donald C. Dudley Jr. received a call from dispatch alerting him to a stolen El Camino car. Officer Dudley encountered the suspects believed to have stolen the vehicle and pulled next to the vehicle. Officer Dudley asked the suspects about the car and they told him that it belonged to them. (5/19/16 Dudley Depo., p. 112.) As Officer Dudley pulled behind the car, the suspects exited what appeared to be a trailer, unhooked the El Camino, and drove away. Officer Dudley lost sight of the vehicle but began pursuit.

**{¶2}** Officer Dudley pursued the suspects while driving at speeds of up to 76 mph through a residential area. Officer Dudley was admittedly unfamiliar with the area and, at one point, lost control of his car because he did not see a warning sign

on the road stating "bump." (*Id.* at 174.)  As Officer Dudley left Coitsville and entered Youngstown, the pursuit crossed jurisdictions.  When he approached the intersection of Landsdowne and McGuffey, Officer Dudley radioed his location to dispatch.  At this point, Officer Dudley saw a swerving vehicle ahead of him that he believed to contain the suspects.  (*Id.* at p. 183.)  As he radioed his location to dispatch, Officer Dudley's vision was focused on the street signs and he did not realize the traffic light was red.  He also did not realize how close he was to the intersection.

{¶3}  Officer Dudley stated that as he approached the intersection, he noticed that the view on the right side of the intersection was obstructed due to an abandoned house and a tree.  (*Id.* at 192.)  He admitted that he did not attempt to look to the right as he entered the intersection.  He also could not see incoming traffic from the left side of the intersection.  However, he assumed any incoming vehicle would stop, because he had activated his emergency lights and siren.  (*Id.* at p. 193.)  However, he testified that he did not turn on his enhanced siren, called a "woofer," as he entered the intersection.

{¶4}  In the intersection, he collided with a car driven by Appellee Renee McConnell, who was on her way to work.  The posted speed limit was 35 mph.  An Ohio State Highway Patrol Report estimated Officer Dudley's speed at between 37 and 41 mph at the time of the collision.  McConnell's estimated speed was between 37 and 40 mph.  McConnell was severely injured in the collision.

{¶5}  On September 15, 2015, McConnell filed a complaint against Officer Dudley (individually), the Coitsville Police Department, Coitsville Township, and

Coitsville Board of Township Trustees, raising claims of Officer Dudley's negligence, negligent hiring and training of Officer Dudley, and loss of consortium. Appellees responded by asserting that they were each entitled to immunity.

{¶6} On September 29, 2016, Appellants filed a motion for summary judgment. Appellees responded to this motion, but did not file their own motion for summary judgment. On February 16, 2017, the trial court found that genuine issues of material fact existed as to whether Officer Dudley's actions constituted willful, wanton, and reckless misconduct and whether he was properly trained and supervised. This timely appeal followed.

Summary Judgment

{¶7} An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶8}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶9}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF THE COITSVILLE TOWNSHIP POLICE DEPARTMENT WHEN THE POLICE DEPARTMENT IS NOT *SUI JURIS* AND CANNOT BE SUED.

**{¶10}** Appellants argue that a police department is not, itself, a legal entity capable of being sued. Because of this, Appellants argue that the trial court erroneously denied their motion to dismiss all claims against the Coitsville Township Police Department. In response, Appellees argue that Appellants failed to raise this issue in their motion for summary judgment, and so have waived this argument.

**{¶11}** Preliminarily, we note that Appellants frame their argument as though it involves a motion to dismiss. However, Appellants did not file a motion to dismiss. The first, and only, reference to the Coitsville Police Department's lack of capacity to be sued is found within a footnote to Appellants' motion for summary judgment.

**{¶12}** In general, a plaintiff must demonstrate that a named party has the legal capacity to sue and to be sued; in other words, that the party is *sui juris*. *Richardson v. Grady*, 8th Dist. Nos. 77381, 77403, 2000 WL 1847588, *2 (Dec. 18, 2000.). "A city police department is not *sui juris*; the real party in interest is the city itself." *Cooper v. Youngstown,* 7th Dist. 15 MA 0029, 2016-Ohio-7184, ¶ 26, citing *Richardson, supra,* at *2.

**{¶13}** However, contrary to Appellants' argument, the lack of capacity to be sued can be waived. In relevant part, Civ.R. 9(A) provides that "[w]hen a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment." See also *State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist.*, 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183, ¶ 10, fn. 3 ("Civ.R. 9(A) requires parties to

claim lack of capacity by 'specific negative averment,' or else the matter is waived");
*State ex rel. Downs v. Panioto,* 107 Ohio St.3d 347, 2006-Ohio-8, 839 N.E.2d 911 (a party must raise the issue of consent to sue or be sued by specific negative averment); *Campolieti v. Cleveland Dept. of Pub. Safety*, 8th Dist. No. 99445, 2013-Ohio-5123 (a party's claim that it lacks the legal capacity to be sued must be raised within the party's answer or is waived.)

**{¶14}** Appellants cite to two cases in support of their argument, *Mollette v. Portsmouth City Counsel*, 179 Ohio App.3d 455, 2008-Ohio-6342, 902 N.E.2d 515 (4th Dist.) and *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573, 589 N.E.2d 1306 (1992). In *Mollette,* only an entity that was not *sui juris* was named in a suit. The issue before the Fourth District was whether the failure to file a complaint against a party with legal capacity to be sued properly commenced the lawsuit for purposes of the statute of limitations. *Id.* at ¶ 50. In answering that it did not, the *Mollette* Court acknowledged that its analysis would have been different if a party having the capacity to be sued had also been named in the complaint. There is no statute of limitations question in the instant matter, and both the police department and the appropriate entity, Coitsville Township, were sued. Thus, *Mollette* provides us no guidance.

**{¶15}** As to *Patterson*, the plaintiff was notified on several occasions that the wrong party had been named as a defendant within the complaint. Importantly, this defendant specifically averred that it lacked the legal capacity to be sued in two separate amended answers. In the instant case, Appellants never specifically

averred that the Coitsville Township Police Department lacked the legal capacity to be sued. Appellants raised the issue of the department's legal capacity solely in a footnote to their motion for summary judgment.

{¶16} Accordingly, although the Coitsville Police Department is not *sui juris*, it appears that Appellants have waived this issue. Appellants are not prejudiced here, however, as Coitsville Township was properly named as a party in the complaint and the Township is clearly the correct legal entity to be sued in this case. See *Fields v. Dailey*, 68 Ohio App.3d 33 587 N.E.2d 400 (10th Dist.1990); *Campolieti*, *supra*. As such, Appellants' first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF COITSVILLE TOWNSHIP WHEN THE TOWNSHIP WAS ENTITLED TO IMMUNITY UNDER R.C. §2744.02(A), AND THE OFFICER INVOLVED IN THE ACCIDENT WAS A MEMBER OF THE COITSVILLE TOWNSHIP POLICE DEPARTMENT, OPERATING A MOTOR VEHICLE WHILE RESPONDING TO AN EMERGENCY CALL, THE OPERATION OF WHICH DID NOT CONSTITUTE WILLFUL OR WANTON MISCONDUCT.

<u>ASSIGNMENT OF ERROR NO. 4</u>

THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF COITSVILLE TOWNSHIP WHEN R.C.

§2744.02(B) DOES NOT CONTAIN AN INDEPENDENT EXCEPTION TO THE POLITICAL SUBDIVISION'S IMMUNITY UNDER R.C. §2744.02(A)(1) FOR THE FAILURE TO HIRE, TRAIN, OR SUPERVISE ITS EMPLOYEES.

**{¶17}** Appellants argue that as entities comprising or representing a political subdivision of the State of Ohio, they are entitled to immunity pursuant to R.C. 2744.02. They claim that, as Officer Dudley was engaged in a governmental function at the time of the incident and was responding to an emergency call, there is no question of fact and they are entitled to judgment as a matter of law.

**{¶18}** In determining whether a political subdivision is entitled to immunity, a three-tiered analysis is employed. *Bowman v. Canfield*, 7th Dist. No. 13 MA 144, 2015-Ohio-1323, ¶ 6, citing *Ziegler v. Mahoning County Sheriff's Department*, 137 Ohio App.3d 831, 835, 739 N.E.2d 1237 (7th Dist.2000); *Abdalla v. Olexia*, 7th Dist. No. 97-JE-43, 1999 WL 803592 (Oct. 6, 1999). The analysis begins with the presumption, "pursuant to R.C. 2744.02(A)(1), that a political subdivision is generally immune from liability for its acts and the acts and actions of its employees unless one of the exceptions enumerated within R.C. 2744.02(B) apply." *Bowman* at ¶ 6.

**{¶19}** The exceptions under the second tier include: (1) the negligent operation of a motor vehicle by an employee who is acting within the subdivision's scope of employment and authority; (2) an employee's negligent performance of acts with respect to the subdivision's proprietary functions; (3) the negligent failure to repair public roads and negligent failure to remove obstructions from public roads; (4)

negligence of employees that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function; and, (5) when a section of the revised code expressly imposes civil liability on the subdivision. *Id.* at ¶ 7. If any of the five exceptions applies, the political subdivision is stripped of its immunity. *Id.*

{¶20} The third and final tier sets out seven defenses that revive a political subdivision's immunity in the event that one of the above exceptions applies. The defenses that restore immunity are: (1) when the political subdivision or an employee of the subdivision is engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function at the time of the alleged injury; (2) when the injury is caused by non-negligent conduct that was required or authorized by law, or by conduct that was necessary or essential to the exercise of the subdivision's powers; (3) when the action that caused the alleged injury was within the employee's discretion by virtue of the office or position held within the political subdivision; (4) when the person whose action caused the injury was serving any portion of a sentence stemming from a criminal conviction by performing community service work within the subdivision; (5) when the injury resulted "from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources." R.C. 2744.03(A)(5).

{¶21} Appellants correctly state that there is no dispute that they qualify for immunity under the first tier of the analysis. Moving, then, to the second tier of the

analysis, the trial court was required to determine whether Appellants were subject to an exception to immunity under R.C. 2744.02(B)(1)(a), which states:

[A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;

{¶22} As the trial court determined that there was no question Officer Dudley was engaged in an emergency call, the crux of this case involves whether he operated his vehicle in a manner that constitutes willful and wanton misconduct. Willful and wanton misconduct has been defined as:

Wanton, willful and/or reckless conduct is conduct that is a degree greater than negligence. *Rankin v. Cuyahoga Cty. Dept. of Children*

*and Family Servs.,* 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶37; *Wagner v. Heavlin* (2000), 136 Ohio App.3d 719, 730-731, 737 N.E.2d 989. Specifically, wanton misconduct is "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." Id. Willful conduct involves a more positive mental state than wanton misconduct and implies intent. Id. at 731. That intention relates to the conduct, not the result. Id. It is an intentional deviation from a clear duty or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.

*DeMartino v. Poland Local School Dist.*, 7th Dist. No. 10 MA 19, 2011-Ohio-1466, ¶ 48.

**{¶23}** Generally, issues regarding wantonness and willfulness are questions for the jury. *Adams v. Ward*, 7th Dist. No. 09 MA 25, 2010-Ohio-4851, ¶ 27. The standard of proof for such conduct is high. *Id.* When reasonable minds cannot conclude that the conduct at issue meets that high standard, a court may determine that such conduct is not willful or wanton as a matter of law. *Id.*

**{¶24}** The trial court determined there was no question of fact that Officer Dudley's actions in his initial encounter with the suspects did not amount to willful and wanton misconduct. However, the court determined it was possible that a jury could find his subsequent actions, especially in entering the intersection, did amount to

willful and wanton misconduct. The court emphasized that Officer Dudley lost sight of the suspects, traveled unfamiliar residential streets at speeds of up to 75 mph, entered an intersection at 35-40 mph without a clear view of oncoming traffic, did not know the traffic light was red against him, did not look both ways before entering the intersection, and was sending a radio transmission at the time he entered the intersection and so may have been unnecessarily distracted.

{¶25} Resolution of this issue depends on whether these facts may give rise to willful and wanton misconduct.

> Police runs in response to emergencies inevitably entail some degree of risk both to the responding officer and affected traffic. * * * Because the law and current police and emergency practice clearly contemplate the necessity in some circumstances of such emergency runs, a responding officer does not create an "unreasonable" risk of harm by engaging in an emergency run merely because such a response creates a greater risk than would be incurred by traveling at normal speed and in compliance with opposing traffic signals. The question of unreasonable risks must be weighed in terms of what is acceptable in the context of an emergency run, not ordinary driving conditions.

*Adams* at ¶ 37.

{¶26} In *Adams,* we determined that the officer's actions in engaging in a high-speed chase did not amount to willful and wanton misconduct. *Id.* at ¶ 10. We emphasized that the officer was traveling, at most, 10 mph over the posted speed

limit, had his lights and sirens activated, was familiar with the road, slowed through the intersection, and attempted to assure that he had clear passage.

**{¶27}** In contrast, a genuine issue of material fact did exist as to whether an officer acted in a willful and wanton manner during a high-speed chase in *Wagner v. Heavlin,* 136 Ohio App.3d 719, 737 N.E.2d 989 (7th Dist.2000). In *Wagner,* we emphasized that a safer route was available, there were conflicting reports as to the officer's speed, the officer was unfamiliar with the road, the incident occurred at night, the officer failed to maintain a safe distance, and the officer admittedly failed to consider the consequences of his actions. *Id.* at 733.

**{¶28}** Appellants rely heavily on a recent Ohio Supreme Court case, *Argabrite v. Neer,* 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161. *Argabrite* is difficult to apply, as the facts related to the officers' conduct are quite limited. The *Argabrite* Court ultimately held in that pursuit case that none of the officers involved engaged in willful or wanton misconduct while pursuing the suspect. However, the Court did note that traffic was light and the weather conditions were sunny. The officers activated their lights and sirens and used radio communications to share their locations during pursuit. The Court emphasized that there was no evidence that any of the officers violated the relevant pursuit policy. Unlike the instant case, it does not appear that the crash occurred at an intersection. We also can determine that this pursuit would have been substantially more noticeable to the general populace, as it involved more than one cruiser with an active siren, and that the victim was injured due to a collision with the suspect, not the officers.

**{¶29}** The one constant that remains true in these types of cases are that they are heavily fact dependent. Our review of all of these cases and of the record, here, reveals that the facts of the instant case are more analogous to *Wagner* than *Adams* or *Argabrite.* Officer Dudley traveled up to 75 mph through unfamiliar residential streets, lost sight of his suspects, and was traveling between 35 and 40 mph when he blindly drove through a red light into the intersection. The posted speed limit was 35 mph. At impact, it was estimated that Officer Dudley was traveling between 37 and 41 mph and the victim was traveling between 37 and 40 mph. While Officer Dudley activated his sirens and lights, he could have activated a louder siren and did not. He did not have a clear view of traffic and failed to even look both ways before entering the intersection. He was admittedly unfamiliar with the roads, had left his jurisdiction, and did not have sight of the suspects' vehicle during much of the pursuit. He was actively engaged in a radio transmission while entering the intersection. Also, the offense at issue was merely a property crime. In looking at the totality of the circumstances, a genuine issue of material fact exists regarding whether Officer Dudley's actions constituted willful and wanton misconduct.

**{¶30}** The trial court also found that a genuine issue of material fact existed regarding Coitsville Township's liability for its conduct in hiring, training, and supervising its officers, including Officer Dudley. Again, the parties acknowledge Appellants are entitled to immunity under the first tier of the analysis. The issue is whether Appellants were stripped of their immunity pursuant to the second tier of the analysis. We have previously held that R.C. 2744.02(B)(1), which strips a political

subdivision of immunity when an employee negligently operates a motor vehicle, includes entrustment and failure to train claims. See *Wagner, supra.*

**{¶31}** The issue of whether a political subdivision can be held liable for failure to train has been addressed by this Court in *Wagner* and *Adams.* In *Wagner,* we held that a genuine issue of material fact existed as to whether the Village of Carrollton negligently trained an officer involved in a vehicle crash and was liable for failing to have a pursuit policy. The officer in question testified that the Carrollton Police Department did not provide pursuit training and such training was limited to the limited training provided by the police academy. The officer also testified that the department did not have a pursuit policy.

**{¶32}** In *Adams,* the Youngstown Police Department did have a pursuit policy. The officer testified that he was aware of the policy and had received training on the policy. We emphasized that the plaintiff failed to show the officer's knowledge of the policy was incomplete or, if it was incomplete, how the accident could have been prevented. Based on these facts, the defendants were entitled to maintain immunity under R.C. 2744.02(B)(1), and all claims, including the entrustment and training claims, were barred.

**{¶33}** In the instant case, the Coitsville Police Department had a pursuit policy. However, Officers are not given a copy of that policy. There is no training given on the policy. Instead, a copy of the pursuit policy is kept inside the department and can be viewed by officers at their discretion. Officer Dudley testified

that he had read the policy and signed a paper indicating as much on his first day as an officer in 2011. He stated that he has not viewed it since.

{¶34} Additionally, Officer Dudley testified that his only adult training relevant to driving was a thirty minute session at the Ohio Peace Officer Training Academy. He testified that driving in these classes did not exceed speeds of 30 to 40 mph and did not include training on pursuit chases. (5/19/16 Dudley Depo., p. 34.) He never received pursuit training during his training with the Coitsville Police Department. (*Id.* at pp. 56, 63.) He did not receive any other training on pursuit chases. (*Id.* at p. 62.)

{¶35} Chief Michael Morris testified that an officer is always supposed to be able to radio to dispatch and talk to a supervisor. (6/6/16 Morris Depo., p. 126.) However, Chief Morris acknowledged that a supervisor is not available during the midnight shift, which was the shift Officer Dudley was working the date of the incident. Chief Morris stated that because of this, a supervisor was not available to assist Officer Dudley in determining whether to stop his pursuit.

{¶36} Chief Morris also admitted that he was critical of Officer Dudley's actions, as "he could have [done] things differently." (*Id.* at p. 135.) Specifically, Chief Morris believed Officer Dudley should have provided more information to dispatch and should have requested that the dispatch contact Youngstown Police Department and requested assistance. (*Id.* at p. 138.) Chief Morris stated that he "[j]ust shook [his] head" when he watched the pursuit dash camera video. (*Id.* at p. 142.) Chef Morris opined that Officer's Dudley's actions were the result of inexperience. "He is a rookie. You know, he was never trained in coming across that

situation so early in his career. I mean, you know, I shake my head at what he did, but what he -- you know, things could have been different." (*Id.* at p. 144.)

**{¶37}** Based on these facts, a genuine issue of material fact exists as to whether Coitsville Township through its Coitsville Police Department was negligent in training and supervising Officer Dudley. Accordingly, Appellants' second and fourth assignments of error are without merit and are overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF OFFICER DUDLEY WHEN THE OFFICER'S ACTIONS WERE NOT IN A WANTON MANNER, AND THERE WAS NO ALLEGATION OF MALICE, BAD FAITH, OR RECKLESSNESS.

**{¶38}** Pursuant to R.C. 2744.03(A)(6), employees of political subdivisions are personally immune from liability for acts or omissions connected with a government or propriety function. However, R.C. 2744.03(A)(6)(a)-(c) provide exceptions to this general rule. Relevant to the instant case, R.C 2744.03(A)(6)(b) provides an exception when "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

**{¶39}** As a threshold matter, Appellants argue that Appellees failed to allege in their complaint that Officer Dudley acted recklessly. Appellees asserted four claims within their complaint: (1) the Coitsville Police Department and Township of Coitsville were vicariously liable for Officer Dudley's actions under a negligence

theory; (2) the Coitsville Police Department and Township of Coitsville were vicariously liable for Officer Dudley's actions pursuant to R.C. 2744.02(B)(1)(a); (3) the Coitsville Police Department and Township of Coitsville were responsible for the negligent hiring and training of Officer Dudley; and (4) a general loss of consortium claim. While Officer Dudley is named in his individual capacity in the heading of the complaint, nowhere in the body of Appellees' complaint did they plead a claim under R.C. 2944.03(A)(6)(b) against Officer Dudley as an individual. In fact, none of the four claims pertain to Officer Dudley as an individual. As Appellees failed to raise a claim against Officer Dudley as an individual in the complaint, the trial court erred in finding that a genuine issue of fact existed as to whether he was liable as an individual under R.C. 2944.03(A)(6)(b). Accordingly, Appellant's third assignment of error has merit and is sustained.

Conclusion

**{¶40}** Appellants argue that they are all entitled to political subdivision immunity regarding an incident caused by a police pursuit. However, there is a genuine issue of material fact as to whether the Coitsville Township Police Department and Coitsville Township are vicariously liable for Officer Dudley's actions and whether he was negligently trained and supervised. The police department contends that it cannot be sued, but has waived the issue. Regardless, the department is not prejudiced, as the responsible township was also named as a defendant. Appellants also argue that the trial court erroneously found a genuine issue of material fact existed as to Officer Dudley as an individual. As Appellees

failed to allege any claim against Officer Dudley as an individual within the complaint, Appellants are correct. Accordingly, Appellants' arguments as to their first, second and fourth assignments of error are without merit and the judgment of the trial court is affirmed. However, Appellants' argument as to their third assignment has merit and the trial court's judgment as to the claims against Officer Dudley in his individual capacity are reversed.

Donofrio, J., concurs.

DeGenaro, J., concurs.