[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *McConnell v. Dudley,* Slip Opinion No. 2019-Ohio-4740.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4740

MCCONNELL ET AL., APPELLEES, *v*. DUDLEY; COITSVILLE TOWNSHIP POLICE DEPARTMENT ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *McConnell v. Dudley,* Slip Opinion No. 2019-Ohio-4740.]**

*Political-subdivision immunity—R.C. 2744.02(B)(1)—The exception to political-subdivision immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle does not encompass an action alleging that the political subdivision negligently hired, trained, or supervised a police officer who was involved in a motor-vehicle accident while responding to an emergency call—Court of appeals' judgment reversed and cause remanded.*

(No. 2018-0377—Submitted June 12, 2019—Decided November 20, 2019.)

APPEAL from the Court of Appeals for Mahoning County,

No. 17 MA 0045, 2018-Ohio-341.

_____

**KENNEDY, J.**

{¶ 1} This discretionary appeal from the Seventh District Court of Appeals presents the issue whether, under the Political Subdivision Tort Liability Act, R.C. Chapter 2744, R.C. 2744.02(B)(1)'s exception to a political subdivision's immunity for the negligent operation of a motor vehicle encompasses an action alleging that the political subdivision negligently hired, trained, or supervised a police officer who was involved in a motor-vehicle accident while responding to an emergency call. The court of appeals held that pursuant to R.C. 2744.02(B)(1), a political subdivision may be liable for its negligent failure to train its police officers in high-speed pursuits.

{¶ 2} Because the language of R.C. 2744.02(B)(1) is plain and unambiguous, it must be applied, not interpreted. *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus. R.C. 2744.02(B)(1) allows political subdivisions to be held liable for an employee's negligent *operation* of a motor vehicle; it does not, however, allow a political subdivision to be held liable for consequences arising from an employee's training or the supervision of that employee in operating the motor vehicle.

{¶ 3} Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

## R.C. 2744.02(B)

{¶ 4} R.C. 2744.02(B) is at the center of this case. Generally, pursuant to R.C. 2744.02(A), a political subdivision is not liable for damages when an injury has been "caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(B) provides exceptions to that general immunity. R.C. 2744.02(B)(1) establishes that a political subdivision is liable for injuries caused by the negligent operation of a motor vehicle by its employees who are acting within

the scope and authority of their employment. However, under R.C. 2744.02(B)(1)(a), that liability does not attach when the employee is a police officer who is responding to an emergency call—unless the operation of the motor vehicle constitutes willful or wanton misconduct. The statute reads:

> (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:
>
> (a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct * * *.

Today, we consider whether a political subdivision's training or supervision of a police officer may constitute "operation of the vehicle" for purposes of determining potential liability for an accident caused by the police officer.

## FACTS AND PROCEDURAL HISTORY

{¶ 5} A few minutes before 8:00 a.m. on September 18, 2013, Coitsville Township Police Officer Donald C. Dudley Jr. responded to a dispatch alert

regarding a stolen vehicle, an El Camino. As Officer Dudley investigated, he located an El Camino that was being towed by a Buick sedan headed toward Youngstown. He pulled alongside the Buick and inquired about the El Camino, and the occupants replied that they owned it. Officer Dudley pulled behind the El Camino, and as he radioed for backup, the suspects unhooked the El Camino from the Buick and drove away in the Buick. Although Officer Dudley attempted to pursue the Buick, he lost sight of it. But he believed that he knew the direction in which the Buick was headed and continued driving north. Officer Dudley then observed a car that he believed was the Buick weaving in and out of traffic. Officer Dudley reached speeds as high as 76 m.p.h. in his pursuit of the Buick.

{¶ 6} As Officer Dudley approached an intersection, he began to radio his position and suddenly collided with a westbound Toyota Corolla driven by appellee Renee McConnell, who was on her way to work. McConnell's car struck a utility pole and overturned, landing on its roof; McConnell sustained serious injuries. Officer Dudley knew that the intersection was controlled by a stop light, but he had not noticed that the light was red as he entered the intersection—and because a house and a tree obstructed his view to the right, he had not seen McConnell's car approaching. At the time of the collision, his speed was approximately 35 m.p.h.

{¶ 7} McConnell, her husband, and their four daughters brought suit against Officer Dudley as well as Coitsville Township and its board of trustees and the Coitsville Township Police Department (collectively, "the township"). The complaint alleged that Officer Dudley's negligent, willful, or wanton operation of the police cruiser and the township's "negligent, willful and/or wanton" conduct in establishing policies and procedures for "pursuit training" and in its hiring and training of Officer Dudley directly and proximately caused McConnell to suffer "extreme and permanent physical injuries." McConnell's husband and four daughters also alleged that Officer Dudley's and the township's conduct proximately caused them to suffer a loss of consortium of their spouse or mother.

{¶ 8} Officer Dudley and the township moved for summary judgment, asserting immunity from suit and urging that neither Officer Dudley's operation of the police cruiser nor the township's alleged negligence in hiring him or training him were actionable.

{¶ 9} R.C. 2744.02(B)(1)—in providing an exception to a political subdivision's immunity—states that political subdivisions are liable for damages that are caused by an employee's negligent operation of a motor vehicle. But R.C. 2744.02(B)(1)(a) provides a full defense to that liability when the employee is a member of the police department and is responding to an emergency call, so long as the operation of the vehicle does not constitute willful or wanton misconduct. The trial court found that although Officer Dudley was operating a motor vehicle within the scope of his employment and in response to an emergency call, there were genuine issues of material fact regarding whether his actions rose to the level of wanton misconduct or recklessness. Wanton misconduct by Officer Dudley would allow the political subdivision to be held liable under R.C 2744.02(B)(1)(a); wanton or reckless behavior by Officer Dudley would allow Officer Dudley to be held liable as an employee of a political subdivision under R.C. 2744.03(A)(6)(b). The trial court also found that genuine issues of material fact remained regarding the claim that the township was liable for its conduct in hiring, training, and supervising its officers. It therefore denied the motion for summary judgment.

{¶ 10} The Seventh District Court of Appeals affirmed the trial court's judgment in part and reversed the judgment in part, concluding that there were genuine issues of material fact regarding whether Officer Dudley's actions constituted willful and wanton misconduct and whether the township was negligent in training and supervising him. 2018-Ohio-341, ¶ 30, 38, 41. However, because the McConnells had failed to plead a claim against Officer Dudley in his individual capacity, the court of appeals held that the trial court erred in finding that a genuine issue of fact existed as to whether he was personally liable. *Id.* at ¶ 40.

{¶ 11} The township appealed to this court. In the meantime, the court of appeals denied the township's motion to certify a conflict between the judgment in this case and judgments of the Eighth District Court of Appeals—*McCloud v. Nimmer*, 72 Ohio App.3d 533, 595 N.E.2d 492 (8th Dist.1991), *Hall-Pearson v. S. Euclid*, 8th Dist. Cuyahoga No. 73429, 1998 WL 703390 (Oct. 8, 1998); *DiGiorgio v. Cleveland*, 8th Dist. Cuyahoga No. 95945, 2011-Ohio-5878, and *Wingfield v. Cleveland*, 8th Dist. Cuyahoga No. 100589, 2014-Ohio-2772—and the Tenth District Court of Appeals—*Glenn v. Columbus*, 10th Dist. Franklin No. 16AP-15, 2016-Ohio-7011. The township alleged in its motion to certify a conflict that contrary to the Seventh District's decision, the Eighth and Tenth Districts had held that there is no independent cause of action under R.C. 2744.02(B) that imposes liability on political subdivisions for the negligent training or hiring of police officers.

{¶ 12} In denying the conflict, the court of appeals stated that it had not treated the McConnells' allegations of the township's negligent hiring and training of police officers as stating an independent claim. Rather, the court stated that "R.C. 2744.02(B)(1) provides an exception to a political subdivision's immunity where the plaintiff can successfully demonstrate that the political subdivision negligently operated a motor vehicle," 2018-Ohio-3099, ¶ 5, and that a political subdivision's negligence in hiring and training police officers "could serve as evidence of wanton or willful behavior on the part of the government," *id*. at ¶ 8.

{¶ 13} We accepted one proposition of law for review: "A political subdivision is immune from liability for allegations of negligent hiring, or failure to train or supervise police officers, as such allegations do not fall within any of the exceptions found within R.C. 2744.02(B)(1) through (B)(5)." *See* 153 Ohio St.3d 1451, 2018-Ohio-3026, 103 N.E.3d 830.

6

**POSITIONS OF THE PARTIES**

{¶ 14} The township maintains that within R.C. 2744.02(B)'s exceptions to a political subdivision's ability to claim immunity, there is no exception to a political subdivision's immunity for negligence in hiring, training, or supervising its employees, and it contends that the exception provided by R.C. 2744.02(B)(1)— the negligent operation of a motor vehicle—does not encompass negligently hiring, training, or supervising the employee who drove the vehicle. The township points to *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, ¶ 26, in support of its argument that the "operation" of a vehicle involves only driving it and therefore that the exception to immunity for negligent operation of a vehicle does not encompass alleged negligence in hiring, training, or supervising the employee who will drive it. The township asserts that only the employee's actions are relevant in determining whether he or she negligently operated a motor vehicle or engaged in willful or wanton misconduct in response to an emergency call.

{¶ 15} The McConnells argue that the court of appeals did not recognize an independent claim for negligent hiring, training, or supervision. Rather, they assert that the defense to liability for emergency calls is not implicated, because the township's own negligence was directly and causally related to the operation of the police cruiser and is therefore actionable pursuant to R.C. 2744.02(B)(1). Here, they argue that the township's alleged negligence occurred before the emergency call in that the township failed to ensure that Officer Dudley was properly qualified, trained, and monitored before he engaged in a high-speed pursuit. Therefore, the McConnells contend, the township is directly liable for the negligent operation of the cruiser. And since the political subdivision's activities did not take place in the spur-of-the-moment turmoil of an emergency call, the McConnells assert that the conduct of the political subdivision should be reviewed under a negligence

standard, since there is no justification for imposing a heightened willful-and-wanton standard—as is the case with emergency calls.

{¶ 16} Accordingly, we are asked to decide whether a political subdivision's alleged negligence in hiring, training, or supervising an employee who will be operating a vehicle may constitute negligent operation of a motor vehicle for purposes of the exception to a political subdivision's immunity set forth in R.C. 2744.02(B)(1).

## LAW AND ANALYSIS

### *Standard of Review*

{¶ 17} "Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 12, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992); *Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 17.

{¶ 18} "The review of a summary judgment denying political-subdivision immunity is de novo and is governed by the summary-judgment standard set forth in Civ.R. 56." *Pelletier* at ¶ 13; *see also Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. As we explained in *Pelletier*:

> "Summary judgment may be granted when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' "

(Brackets sic.) *Id.*, quoting *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

*Statutory Construction*

{¶ 19} This case presents a straightforward question of statutory interpretation. "Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted." *Pelletier* at ¶ 14, citing *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18; *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. "To discern legislative intent, we read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 137 Ohio St.3d 257, 2013-Ohio-4654, 998 N.E.2d 1124, ¶ 15. And as we explained in *Symmes Twp. Bd. of Trustees v. Smyth*, "[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears*, 143 Ohio St. 312, 55 N.E.2d 413, at paragraph five of the syllabus.

*Political-Subdivision Immunity*

{¶ 20} R.C. Chapter 2744, the Political Subdivision Tort Liability Act, sets forth a comprehensive statutory scheme for the tort liability of political subdivisions and their employees. *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, ¶ 11. "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a familiar, three-tiered analysis." *Pelletier*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, at ¶ 15.

{¶ 21} The first tier of the sovereign-immunity analysis involves the general grant of immunity to political subdivisions by R.C. 2744.02(A)(1), which provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." That immunity, however, is not absolute. *See* R.C. 2744.02(B); *Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, 986 N.E.2d 983, ¶ 15.

{¶ 22} The second tier of the sovereign-immunity analysis involves determining whether any of the five exceptions to immunity that are listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Pelletier* at ¶ 15. As part of this second tier, the court may also have to consider whether any of the specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply. *Id.*; *Riffle* at ¶ 15.

{¶ 23} If any one of the five exceptions to immunity in R.C. 2744.02(B) applies and if any defenses that may be asserted by the political subdivision under R.C. 2744.02(B)(1) do not apply, then the third tier of the sovereign-immunity analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply to reinstate the political subdivision's immunity. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 15. Because we resolve this cause pursuant to the second-tier analysis, we do not address the third tier in this cause.

*R.C. 2744.02(B)(1)(a)*

{¶ 24} Our focus is on the second tier of the sovereign-immunity analysis; it is undisputed that—as to the first tier—operating a police cruiser in response to an emergency call is a governmental function. Pursuant to R.C. 2744.01(C)(2)(a), "[t]he provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection" is a governmental function.

{¶ 25} Moving to the second tier of the sovereign-immunity analysis, R.C. 2744.02(B)(1)—as noted above—establishes an exception to political-subdivision immunity for the negligent operation of a motor vehicle by the political subdivision's employees.

{¶ 26} R.C. 2744.02(B)(1)(a), however, provides the political subdivision a "full defense[ ] to that liability" when "[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct." This provision applies "when an officer is responding to a call to duty, which includes responding to a dispatch for assistance out of a professional obligation to do so." *Smith*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, at ¶ 40. The McConnells did not appeal the trial court's determination that Officer Dudley was responding to an emergency call.

{¶ 27} This court's focus is on the operation of Officer Dudley's vehicle and whether the township's hiring or training of Officer Dudley falls within R.C. 2744.02(B)(1)'s negligent-operation exception thereby barring the township's claim of immunity. The word "operation" is not defined by R.C. Chapter 2744. However, in *Doe*, we noted that its dictionary definition "suggests that 'operation,' when used in reference to a motor vehicle, pertains to controlling or directing the functioning of the motor vehicle itself." 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, at ¶ 20. And we pointed out that in regulating the operation of motor vehicles, the General Assembly has provided that " 'operate' means 'to cause or have caused movement of a vehicle, streetcar, or trackless trolley.' " *Id*. at ¶ 23, quoting R.C. 4511.01(HHH). We therefore held that "the exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle pertains only to negligence in driving or otherwise causing the vehicle to be moved." *Id*. at ¶ 26. We rejected the view that the "operation" of a school bus also encompasses any

other actions, such as a bus driver's supervision of the students who ride the bus. *Id*. at ¶ 19, 28.

{¶ 28} As we explained in *Doe*, R.C. 2744.02(B)(1) is unambiguous and provides an exception to a political subdivision's immunity when an employee, acting within the scope of his or her employment and authority in connection with a governmental or proprietary function, negligently causes injury, death, or loss to a person or property *while driving a motor vehicle*. The analysis of the Seventh District Court of Appeals suggests that the political subdivision may itself be negligent in the operation of the vehicle. But political subdivisions do not drive.

{¶ 29} Further, it is the employee's conduct, not the political subdivision's, that establishes the exception from immunity under the statute. The statutory exception to immunity specifically states that political subdivisions are liable for the "negligent operation of any motor vehicle *by their employees when the employees are engaged within the scope of their employment and authority*," (emphasis added), R.C. 2744.02(B)(1), except when "[*a*] *member of a municipal corporation police department* \* \* \* was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct," (emphasis added), R.C. 2744.02(B)(1)(a). Therefore, the plain language of the statute demonstrates that the political subdivision's liability depends on the *employee's* actions in driving the vehicle: whether the employee negligently operated the vehicle, whether the employee was within the scope of his or her employment and authority, whether the employee was responding to an emergency call, and whether the employee's operation of the vehicle constituted willful or wanton misconduct. R.C. 2744.02(B)(1)(a) makes plain that it is the driver's conduct and culpability in operating a vehicle—not the political subdivision's—that determines whether the political subdivision may be held liable under the statute.

{¶ 30} Neither the courts below nor the McConnells point to any other provision of R.C. 2744.02(B) that imposes liability on the township for its alleged tortious conduct in hiring, training, or supervising Officer Dudley. Moreover, negligence (or reckless, wanton, or willful conduct) in hiring, training, and supervising does not fall within the plain language of any of the exceptions established by R.C. 2744.02(B)(1) through (5). Nothing in the plain language of this statute provides an additional exception that imposes liability on the political subdivision for its actions in hiring, training, or supervising an employee or entrusting him or her with a vehicle, and we may not add it ourselves under the guise of statutory interpretation. *See Doe*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, at ¶ 29. The township is therefore entitled to summary judgment on the McConnells' claim that the township was "negligent, willful and/or wanton in their hiring, policies and/or training of [Officer] Dudley."

## CONCLUSION

{¶ 31} In enacting the Political Subdivision Tort Liability Act, the General Assembly sought to "conserve[] the fiscal resources of political subdivisions by limiting their tort liability" while "permit[ting] injured persons, who have no source of reimbursement for their damages, to recover for a tort committed by the political subdivisions." *Menefee v. Queen City Metro*, 49 Ohio St.3d 27, 29, 550 N.E.2d 181 (1990). Balancing these competing interests necessarily required the legislature to draw lines regarding what claims may be pursued against a political subdivision and what damages an injured person may recover from a political subdivision.

{¶ 32} It is the function of the General Assembly to weigh such competing policy concerns when enacting legislation. *See Schwan v. Riverside Methodist Hosp.*, 6 Ohio St.3d 300, 302, 452 N.E.2d 1337 (1983). In contrast, "[o]ur role, in exercise of the judicial power granted to us by the Constitution, is to interpret and apply the law enacted by the General Assembly." *Houdek v. ThyssenKrupp*

*Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 29. And because R.C. 2744.02(B) is unambiguous, we must simply apply its plain meaning here. That statute does not impose liability on a political subdivision for allegedly violating a duty in hiring, training, or supervising a police officer who is subsequently involved in an accident during a high-speed pursuit of suspects.

{¶ 33} In this case, the trial court erred in failing to enter summary judgment on the relevant count of the McConnells' complaint. We therefore reverse the judgment of the Seventh District Court of Appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

FRENCH, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., and DONNELLY, J., concur in judgment only.

STEWART, J., concurs, with an opinion.

————————————

**STEWART, J., concurring.**

{¶ 34} I agree with the analysis and conclusions set forth in the majority opinion. I write separately only to point out that while a political subdivision is not liable under R.C. 2744.02(B)(1) for negligence in hiring, training, or supervising an employee, evidence of supervisory negligence in this setting may still have some bearing on whether an employee's operation of a vehicle was negligent or, in the event of an emergency call, whether an employee's conduct was willful and wanton in nature.

————————————

Rafidi, Pallente & Melewski, Ryan J. Melewski, and Mark A. Rafidi; and Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube, for appellees.

Baker, Dublikar, Beck, Wiley & Mathews, Gregory A. Beck, James F. Mathews, and Andrea K. Ziarko, for appellants.

Zach Klein, Columbus City Attorney, and Lara N. Baker-Morrish and Andrew D. M. Miller, Assistant City Attorneys; Donnette A. Fisher, Xenia Director of Law; Garry E. Hunter; Isaac, Wiles, Burkholder & Teetor, L.L.C., Mark Landes, and Dale D. Cook; Jennifer A. Hardin; Lisa A. Eliason, Athens Director of Law; Robert F. Jacques, Oakwood Director of Law; Paula Boggs Muething, Cincinnati City Solicitor, and Peter J. Stackpole, Assistant City Solicitor; Mark M. Feinstein, Urbana Director of Law/Municipal Prosecutor; Lisa Okolish Miller, Barberton Director of Law; David J. Tarbert, Zanesville Director of Law; Eve V. Belfance, Akron Director of Law, and John Christopher Reece, Michael J. Defibaugh, and Brian D. Bremer, Assistant Directors of Law; Mazanec, Raskin & Ryder Co., L.P.A., and Paul-Michael La Fayette; Thrasher, Dinsmore & Dolan, L.P.A., and Dale H. Markowitz; L. James Juliano Jr., Cleveland Heights Director of Law; and Thomas N. Palmer, Galion Director of Law, urging reversal for amici curiae city of Columbus, city of Xenia, Ohio Municipal Attorneys Association, Ohio Municipal League, Buckeye State Sherriff's Association, Ohio Township Association, County Commissioners Association of Ohio, Ohio School Boards Association, mayor of the City of Athens, city of Oakwood, city of Cincinnati, city of Urbana, city of Barberton, city of Zanesville, city of Akron, village of Plain City, village of Chagrin Falls, city of Cleveland Heights, and city of Galion.

Kristen Bates Aylward, Canton Director of Law, and Kevin R. L'Hommedieu, Canton Law Department; Andrea Scassa, Massillon Director of Law; and Jennifer L. Arnold, Alliance Director of Law, urging reversal for amici curiae cities of Canton, Massillon, and Alliance.

Murray & Murray Co., L.P.A., and Margaret M. Murray, urging affirmance for amicus curiae Ohio Association for Justice.

_____