[Cite as *McGuire v. Mansfield*, 2025-Ohio-1961.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ROBERT MCGUIRE, ET AL. | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiffs-Appellees | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | Case Nos. 2024 CA 0071 |
| CITY OF MANSFIELD, ET AL. | : | 2024 CA 0072 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 2023-CV-0132R

JUDGMENT:     Reversed

DATE OF JUDGMENT:     May 30, 2025

APPEARANCES:

For Plaintiffs-Appellees

JOEL BUCKLEY
2321 Kemper Lane
Cincinnati, OH 45206

For Defendants-Appellants

D. PATRICK KASSON
200 Civic Center Drive, 8th Floor
Columbus, OH 43215

JOSEPH O. FLANNERY
200 Public Square, Suite 1200
Cleveland, OH 44114

GREGORY A. BECK
MEL L. LUTE, JR.
ANDREA K. ZIARKO
400 South Main Street
North Canton, OH 44720

*King, J.*

{¶ 1}   Defendants-Appellants, George Williams, Allen Price, Matthew Kendle, and Michael Drum (Case No. 2024 CA 0071), and Korey Kaufman and City of Mansfield (Case No. 2024 CA 0072), appeal the September 18, 2024 judgment entry of the Court of Common Pleas of Richland County, Ohio, denying their respective motions for summary judgment.   Plaintiffs-Appellees are Robert and Amber McGuire.   We reverse the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On March 21, 2022, Robert McGuire experienced an asthma attack and shortness of breath and his inhaler did not give him any relief.   McGuire admitted to inhaling a marijuana "dab" which is a concentrated form of cannabis earlier in the day, but claimed the asthma attack was triggered by a pine-scented candle.   Emergency services were called and Williams, Price, Kendle, and Drum from the Mansfield Fire Department responded to McGuire's residence.   Williams was the only certified paramedic and in charge.   McGuire received a Duo nebulizer and was loaded into an ambulance for transport to OhioHealth Mansfield Hospital, a Level 1 Trauma Center. Kendle drove the ambulance and Williams and Drum were in the back with McGuire. Price drove separately to the hospital.   During the transport, McGuire showed signs of distress and became agitated and uncooperative.   He kicked his feet, swung his arms, pulled the nebulizer mask off his face, and struggled with the firefighters in the back of the moving ambulance.   Instead of continuing treatment, Williams and Drum had to subdue McGuire to ensure his safety.   They could not administer an IV or place an oxygen mask on his face.

{¶ 3} Upon arriving at the hospital, Kendle exited the ambulance and observed Mansfield Police Officer Kaufman nearby; Kendle asked him for assistance. Kaufman observed McGuire struggling with Williams and Drum in the back of the ambulance. Kaufman decided to place McGuire in handcuffs so Williams and Drum could render care. McGuire was flipped over in a prone position so Kaufman could handcuff his arms behind his back; he was then placed back into a supine position. McGuire appeared not to be breathing. The decision was made to immediately take McGuire into the emergency department for emergency care. The time from when McGuire was unresponsive and not breathing to when emergency personnel administered a breathing treatment was one minute and forty-two seconds. The entire encounter from arrival to McGuire's residence to taking McGuire into the emergency room was less than ten minutes. McGuire suffered injuries including cardiopulmonary arrest with consistent brain injury due to hypoxia and hypotension.

{¶ 4} On March 14, 2023, McGuire, together with his wife, filed a complaint against appellants alleging they acted in a willful and/or wanton manner in providing emergency services and City was vicariously liable for appellants' actions. Appellees also alleged an independent claim against City for negligent hiring, retention, training, and supervision of its employees. Wife alleged a loss of consortium claim.

{¶ 5} On June 12, 2024, the firefighters filed a motion for summary judgment, arguing immunity under R.C. 4765.49(A). Kaufman and City also filed a motion for summary judgment on same date, arguing immunity under R.C. Ch. 2744. By judgment entry filed September 18, 2024, the trial court denied the motions, finding "genuine issues of material fact exist regarding political subdivision immunity which require findings of fact

by a jury." The trial court found a jury should determine whether Kaufman acted "maliciously, in bad faith, or a wanton or reckless manner," whether the firefighters acted in a willful or wanton manner, and whether any misconduct by any of the individual employees abrogated City's immunity.

{¶ 6} The firefighters filed an appeal with the following assignment of error:

I

{¶ 7} "THE TRIAL COURT ERRED IN DENYING DEFENDANTS GEORGE WILLIAMS, ALLEN PRICE, MATTHEW KENDLE, AND MICHAEL DRUM'S MOTION FOR SUMMARY JUDGMENT BASED ON THE IMMUNITY AFFORDED TO FIRST RESPONDERS UNDER R.C. 4765.49(A) BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER DEFENDANTS WERE WILLFUL AND WANTON IN THEIR CARE OF PLAINTIFF ROBERT MCGUIRE."

{¶ 8} Kaufman and City filed an appeal with the following assignments of error:

I

{¶ 9} "THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF MANSFIELD POLICE OFFICER KOREY KAUFMAN."

II

{¶ 10} "THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF THE CITY OF MANSFIELD."

I, I & II

{¶ 11} All appellants claim the trial court erred in denying their respective motions for summary judgment. We agree.

{¶ 12} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Regarding summary judgment, the Supreme Court stated the following in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448 (1996):

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

{¶ 13} In *Leech v. Schumaker,* 2015-Ohio-4444, ¶ 13 (5th Dist.), this court explained the following:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot

prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 14} As an appellate court reviewing summary judgment motions, we stand in place of the trial court and review the issues de novo, under the same standards and evidence as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶ 15} In denying the motions for summary judgment, the trial court concluded genuine issues of material fact exist as to whether appellants are immune from liability.

In *Greene County Agricultural Society v. Liming,* 89 Ohio St.3d 551, 556-557 (2000), the Supreme Court of Ohio explained the three-tier analysis required for determining if immunity applies to a political subdivision:

> R.C. Chapter 2744 sets out the method of analysis, which can be viewed as involving three tiers, for determining a political subdivision's immunity from liability. First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 [defenses and immunities] becomes relevant, as the third tier of analysis.

{¶ 16} There is no dispute that City and its employees were performing a governmental function. R.C. 2744.01(C)(2)(a) (a "governmental function" includes the "provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection").

{¶ 17} The second step of the analysis is to determine whether any of the exceptions to the general rule of immunity contained in R.C. 2744.02(B) apply. The relevant exception in this case is under R.C. 2744.02(B)(5) which states in part: "a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code." *See Johnson v. Cleveland*, 2011-Ohio-2152, ¶ 21 (8th Dist.).

{¶ 18} Under R.C. 2744.03(A)(6)(b), an employee of a political subdivision is immune from liability unless the "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 19} Under R.C. 4765.49(A), first responders and emergency medical technician-paramedics are not liable in damages for injury resulting from the administration of emergency medical services "unless the services are administered in a manner that constitutes willful or wanton misconduct."

{¶ 20} Under R.C. 4765.49(B), a political subdivision is likewise not liable in damages for injury "arising out of any actions taken by a first responder, EMT-basic, EMT-I, or paramedic working under the officer's or employee's jurisdiction, . . . unless the services are provided in a manner that constitutes willful or wanton misconduct."

{¶ 21} In their complaint, appellees alleged willful and/or wanton misconduct; they did not allege malicious purpose, bad faith, or recklessness. In *Anderson v. Massillon*, 2012-Ohio-5711, ¶ 31-33, the Supreme Court of Ohio held the following:

However, as the historical development of these terms in our jurisprudence demonstrates, "willful," "wanton," and "reckless" describe different and distinct degrees of care and are not interchangeable. . . .

Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. *Tighe v. Diamond,* 149 Ohio St. [520] at 527, 80 N.E.2d 122; *see also Black's Law Dictionary* 1630 (8th Ed.2004) (describing willful conduct as the voluntary or intentional violation or disregard of a known legal duty).

Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Hawkins [v. Ivy],* 50 Ohio St.2d [114] at 117-118, 363 N.E.2d 367; *see also Black's Law Dictionary* 1613-1614 (8th Ed.2004) (explaining that one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results).

{¶ 22} In denying appellants' motions for summary judgment, the trial court analyzed willful, wanton, and reckless misconduct, but reckless misconduct was not alleged in the complaint. The relevant degree of care for Officer Kaufman is wanton misconduct; for the firefighters, it is willful or wanton misconduct. R.C. 2744.03(A)(6)(b); R.C. 4765.49(A). The trial court concluded the following:

The issue of wanton misconduct is normally a jury question. Consequently the existence of wanton or willful misconduct under the facts of this case is a question for a jury. Plaintiffs are entitled to have facts relating to the conduct of Mansfield City Police Officer Korey Kaufman and Mansfield City Firefighters/EMTs, George Williams, Allen Price, Matthew Kendle, and Michael Drum during the March 21, 2022 emergency service medical run reviewed for misconduct and whether any misconduct meets the relevant standard for abrogating political subdivision immunity determined by the jury. (Footnote omitted.)

{¶ 23} In support of its statement, "[t]he issue of wanton misconduct is normally a jury question," the trial court cited this court's decision in *Toles v. Regional Emergency Dispatch Center,* 2003-Ohio-1190, ¶ 84 (5th Dist.), citing *Fabrey v. McDonald Village Police Department,* 70 Ohio St.3d 351, 356 (1994). In *Toles,* a 9-1-1 dispatcher failed to notify police of a reported fight in a vehicle; the victim was subsequently stabbed to death. The trial court examined the facts and found no evidence of willful or wanton misconduct and granted summary judgment to the dispatch center. This court found the issue of wanton misconduct ("'failure to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result'") was a jury question "due to the lack of any attempt" by the dispatcher to notify the police after receiving the call. *Toles* at ¶ 80, 82, quoting *Gladon v. Greater Cleveland Regional Transit Authority,* 75 Ohio St.3d 312 (1996). *Toles*

is not this case. A blanket belief that the issue of wanton misconduct is a jury question would preclude any dismissals for the affirmative defense of immunity under the sovereign immunity statutes.

{¶ 24} We note in its judgment entry, the trial court did not include an analysis of any of the deposition testimony or evidence presented for summary judgment review. An examination of appellants' conduct is required under the immunity statutes.

THE FIREFIGHTERS

{¶ 25} Williams was the only certified paramedic on the scene and was in charge of McGuire's medical care. Williams depo. at 9, 16-17, 49, 65; Drum depo. at 23; Kendle depo. at 16, 31. Upon Williams's visual inspection of McGuire's labored breathing and the inhaler on the ground, coupled with asking his wife about his medical history, Williams determined McGuire was suffering from an asthma attack. Williams depo. at 20-23, 27, 32, 39-40; Drum depo. at 23-24. This was consistent with the opinion of McGuire's internal medicine expert, John Filip, M.D., who opined McGuire "had a severe bronchial asthma attack at home." Filip depo. at Exhibit 2, Independent Medical Evaluation in the Field of Internal Medicine and Cardiology, at 32, 45. Also, McGuire's standard of care expert, Firefighter Paramedic Robert Krause, agreed McGuire was suffering from an asthma attack. Krause depo. at 28. McGuire was given a DuoNeb treatment (pure oxygen) which both Dr. Filip and Krause agreed was the first line standard of care treatment for an asthma attack. Filip depo. at 54-56; Krause depo. at 28-30; Williams depo. at 21, 30, 39-40; Drum depo. at 24, 29, 31-32. Another first line standard of care treatment is immediate transport to a hospital which the firefighters commenced within five minutes after arriving on the scene. Filip depo. at 53; 107; Williams depo. at 20;

Kendle depo. at 18. The decision was made to transport McGuire to the hospital as quickly as possible and do a "secondary assessment in the back of the squad . . . [e]n route to the hospital." Drum depo. at 57.

{¶ 26} During the transport, Williams and Drum were in the back of the ambulance while Kendle drove. Drum depo. at 63; Kendle depo. at 17-18. McGuire became agitated and began to panic, tearing off his oxygen mask and kicking his feet and swinging his arms. Williams depo. at 30, 40-41, 54; Drum depo. at 29. Williams and Drum attempted to hold McGuire down to prevent him from falling off the cot. Drum depo. at 37-41; Kendle depo. at 28. McGuire's actions prevented the firefighters from providing care while transporting him to the hospital; they could not administer an IV, take his blood pressure, or place an oxygen mask on his face. Williams depo. at 27, 36-37, 40; Drum depo. at 39, 62. The firefighters were unable to perform any "further assessments or treatments while we were trying to keep ourselves safe and the patient safe while we were driving to the hospital." Drum depo. at 62. Upon arrival to the hospital, McGuire was still struggling with the firefighters. Williams depo. at 46, 52; Kendle depo. at 22, 28. Kendle exited the ambulance, observed Officer Kaufman, and asked him for assistance. Drum depo. at 38; Kendle depo. at 22, 36, 37-38; Kaufman depo. at 18. McGuire was placed on his stomach (prone position) so Kaufman could handcuff him behind his back. Kaufman depo. at 19-20; Williams depo. at 48; Kendle depo. at 37. McGuire was then rolled over on his back (supine position) and appeared not to be breathing. Williams depo. at 49; Drum depo. at 43. The firefighters decided to immediately take McGuire into the emergency room for further care. Williams depo. at 49-50; Drum depo. at 43-44. Krause opined the decision to take McGuire immediately into the emergency room was the decision he would have

made under the circumstances. Krause depo. at 46-47. Krause was critical of the care McGuire received, but agreed the firefighters provided him with "portions of care." Krause depo. at 47-50.

{¶ 27} Mansfield Firefighter Paramedic Daniel Crow conducted an internal investigation of the incident and issued a report. Crow criticized the responding firefighters' failure to take McGuire's vital signs, take his pulse oximetry, establish his respiratory rate, conduct cardiac monitoring, deliver supplemental oxygen, and perform capnography. Crow depo. at 258-263, 266, 268-269, 279-282; Exhibit C, Investigation Report, at 3-4. Crow opined knowing the vitals and the pulse oximetry were necessary to establish a baseline in order to determine whether any given treatment was working. *Id.* at 71, 242-244. But Crow agreed a DuoNeb treatment was the first line standard of care treatment for an asthma attack which McGuire received. *Id.* at 17-18, 82, 103-104. He also agreed some of the procedures they failed to do could have been done once McGuire was on the cot and in the back of the ambulance, but admitted they could not be done once McGuire became uncooperative. *Id.* at 120, 122. Crow also criticized McGuire's restraint by Williams during the struggle in the back of the ambulance. *Id.* at 128, 250-251, 285. Crow opined Williams placing his arm on McGuire's face and compressing it was outside the scope of what a paramedic should do. *Id.* at 128, 285, 287-288; Exhibit C, at 5-6. Crow further opined after McGuire became unresponsive, the proper procedure would have been to ventilate him and provide him with oxygen. *Id.* at 139-140, 198, 265; Exhibit C, at 6.

{¶ 28} The evidence presented does not show the firefighters' conduct was willful. They did not act with "an intentional deviation" from their duties, with "a deliberate purpose

not to discharge some duty necessary to safety," or acted purposefully to do a wrongful act "with knowledge or appreciation of the likelihood of resulting injury." *Anderson,* 2012-Ohio-5711, at ¶ 32. In fact, their actions were quite the contrary. The firefighters administered a DuoNeb treatment to help McGuire breathe and immediately transported him to the hospital for emergency medical care, both first line standard of care treatments. During the transport, they attempted to secure McGuire's safety in the back of the moving ambulance and render further medical aid which they were precluded from doing due to McGuire's uncooperative actions.

{¶ 29} The evidence presented also does not show the firefighters' conduct was wanton. They did not fail "to exercise any care toward" McGuire "whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* at ¶ 33. While experts can argue over the more correct care, that is a negligence issue that does not rise to the standard of wanton care. *Id.* at ¶ 45; *Tillman v. Mantz,* 2022-Ohio-2527, ¶ 36 (6th Dist.). "[E]ven a series of inept choices do not convert negligence into willful or wanton acts." *Tillman* at ¶ 38. To use a medical malpractice standard for a first responder would basically eviscerate the immunity statutes; that is why the wanton standard is the "failure to exercise any care."

{¶ 30} McGuire's reliance on *Herron v. Columbus,* 2016-Ohio-503 (10th Dist.), is misplaced. *Herron* involved a similar fact pattern: an asthma attack without taking initial vitals. But in *Herron,* the paramedics failed to provide any care for fifteen minutes. Here, the firefighters immediately administered a DuoNeb treatment and transported McGuire to the hospital. They were precluded from giving McGuire additional care while in the

ambulance due to his uncooperative actions. The firefighters' entire encounter with McGuire, from arrival to emergency room, lasted nine minutes.

## OFFICER KAUFMAN

{¶ 31} After being flagged down by Kendle, Officer Kaufman observed McGuire "fighting" in the back of the ambulance. Kaufman depo. at 18, 35-36; Williams depo. at 47. Kaufman decided to handcuff McGuire so the firefighters could administer aid. Kaufman depo. at 18, 35. McGuire was flipped on his stomach (prone position) so Kaufman could handcuff him behind his back per police department policy. *Id.* at 19-20, 36-37. Kaufman explained a combative individual handcuffed in front could "still have access to use their hands as weapons, and, now, they have metal attached to them." *Id.* at 20. Kaufman also explained he used a "pressure point strike" on McGuire's ribcage "to stun him to get him to roll over." *Id.* at 24-25. It took approximately forty-five seconds to a minute to handcuff McGuire. *Id.* at 37. McGuire was then turned onto his back (supine position) when he appeared unresponsive. *Id.* at 27. He was immediately wheeled into the emergency room. *Id.* at 28. Kaufman was not aware of McGuire's breathing issues. *Id.* at 33.

{¶ 32} The evidence presented does not show Kaufman's conduct was wanton. He did not fail "to exercise any care toward" McGuire "whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson,* 2012-Ohio-5711, at ¶ 33. Kaufman was informed the patient in the ambulance was "combative" and/or uncooperative; McGuire needed subdued to receive treatment. Kaufman handcuffed McGuire according to police department policy in order to stop the altercation and help McGuire receive the medical care he needed. There is no evidence Kaufman

was aware of the risk of handcuffing McGuire, but was not trying to avoid it and was indifferent to whether harm would result.

{¶ 33} Assuming arguendo recklessness was alleged as argued by appellees, the evidence presented does not show Kaufman's conduct was reckless. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." (Citations omitted.) *Id.* at ¶ 34. Kaufman responded to the firefighters' request for help to subdue an uncooperative patient that needed medical assistance; it was an emergency situation. Kaufman's rendering of aid was not unreasonable under the circumstances. He was not aware of McGuire's asthma attack and breathing issues. Kaufman did not exhibit a "conscious disregard of or indifference to a known or obvious risk of harm" that was "unreasonable under the circumstances."

CITY

{¶ 34} Because Kaufman is subject to immunity under R.C. Ch. 2744, City is not liable for damages under vicarious liability. *Scott v. Dennis,* 2011-Ohio-12, ¶ 16, fn. 1 (8th Dist.) ("respondeat superior claim is not addressed by any of the five enumerated exceptions to immunity"). Because the firefighters are subject to immunity under R.C. 4765.49(A), City is not liable for damages. R.C. 4765.49(B).

{¶ 35} As for appellees' claim against City for negligent hiring, retention, training, and supervision of its employees, the Supreme Court of Ohio has held: "Nothing in the plain language of this statute [R.C. 2744.02(B)] provides an additional exception that imposes liability on the political subdivision for its actions in hiring, training, or supervising

an employee . . . and we may not add it ourselves under the guise of statutory interpretation."  *McConnell v. Dudley*, 2019-Ohio-4740, ¶ 30.

{¶ 36} Upon review, we do not find any genuine issues of material fact to remain on the issue of immunity; appellants are subject to immunity under R.C. Ch. 2744 and R.C. 4765.49.  We find the trial court erred in denying summary judgment to appellants on the issue of immunity.

{¶ 37} All three assignments of error are granted.

{¶ 38} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby reversed.

By: King, P.J.

Popham, J. and

Gormley, J. concur.