[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hoskins v. Cleveland*, Slip Opinion No. 2026-Ohio-1225.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1225

HOSKINS, EXR., APPELLEE, *v.* THE CITY OF CLEVELAND ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hoskins v. Cleveland*, Slip Opinion No. 2026-Ohio-1225.]**

*Political subdivisions—Immunity from suit—R.C. Ch. 2744—No evidence of a physical defect with respect to lifeguard chair or pool area was presented— A decision to use one chair rather than another does not amount to a physical defect on pool grounds under R.C. 2744.02(B)(4)—Exception to political-subdivision immunity in R.C. 2744.02(B)(4) does not apply— Court of appeals' judgment reversed.*

(No. 2023-1344—Submitted March 11, 2025—Decided April 8, 2026.)

APPEAL from the Court of Appeals for Cuyahoga County,
No. 112095, 2023-Ohio-3149.

_____

DETERS, J., authored the opinion of the court, which DEWINE, HAWKINS, and SHANAHAN, JJ., joined. KENNEDY, C.J., concurred, with an opinion. FISCHER, J., concurred in judgment only. BRUNNER, J., dissented, with an opinion.

**DETERS, J.**

{¶ 1} When William Johnson drowned in a pool owned by the City of Cleveland, the executor of his estate sued the city and the lifeguard who was on duty at the time, among others. The city maintained that it was immune from liability for Johnson's death under R.C. 2744.01, et seq. But the executor countered that the city's immunity was removed by an exception to political-subdivision immunity found in R.C. 2744.02(B)(4), because Johnson's death was due to a "physical defect" on the pool grounds. Specifically, the executor claimed that the lifeguard's use of a folding chair rather than an elevated lifeguard chair amounted to a physical defect.

{¶ 2} The trial court concluded that there was a genuine issue of material fact and denied the city's motion for summary judgment. The Eighth District Court of Appeals affirmed, relying primarily on its own earlier decision in a similar case in which it had concluded there was a genuine issue of material fact about whether the use of a low-deck lifeguard chair in a pool area created a physical defect on the pool grounds. The court of appeals reached the same conclusion in this case, finding that "there [was] a genuine issue of material fact as to whether the use of the low folding chair created a physical defect at the pool grounds." 2023-Ohio-3149, ¶ 22 (8th Dist.).

{¶ 3} We disagree with the Eighth District. The decision to use one chair rather than another plainly does not amount to a physical defect on the pool grounds under R.C. 2744.02(B)(4). Because that exception does not apply, the city retains its political-subdivision immunity. We therefore reverse the judgment of the court of appeals and remand the case to the trial court for entry of summary judgment in favor of Cleveland.

## BACKGROUND

{¶ 4} In December 2019, William Johnson was swimming at the Thurgood Marshall Recreation Center, which is owned and operated by the City of Cleveland. Nieemah Hameed was the lifeguard on duty at the time. While Johnson swam, Hameed sat in a folding chair on the side of the pool. In her deposition, Hameed stated that she had chosen to sit in the folding chair, rather than an elevated lifeguard "ladder chair" that was also on the pool deck. She explained that the lifeguard chair was "a little smaller than what [she was]" and so she found it uncomfortable.

{¶ 5} Hameed described what she said was Johnson's regular swimming routine at the pool: First, he would swim 10 to 15 laps. Then, he would "jog widthwise across the pool for about 20 minutes or so." After that, "he would do bobs, which would just be going up and down, blowing bubbles underwater" in the deep end of the pool, followed by treading water. According to Hameed, Johnson normally ended his routine after treading water. But this time, Johnson got out of the pool and went into the sauna. After using the sauna, he reentered the deep end of the pool and "returned back to doing the bobs and treading water" and "sitting on the bottom of the pool just blowing bubbles."

{¶ 6} Hameed explained that she scanned the pool, watching both Johnson in the deep end and another swimmer in the shallow end. When she did not see Johnson resurface, she stood up to "see if [she] could see him" and saw him sitting at the bottom of the pool, blowing bubbles. Hameed said that Johnson then surfaced, so she sat back down and continued scanning the pool. When Hameed again did not see Johnson surface, she walked over to the deep end of the pool and saw him at the bottom of the pool. This time, though, he was not blowing bubbles. According to Hameed, she told another lifeguard, Rod-El Hill, who had just arrived for his shift, that she needed assistance and then jumped into the pool to pull Johnson out. When Hameed and Hill got Johnson to the pool deck, he had no pulse, so they began to administer CPR until EMTs arrived. The EMTs were unable to

resuscitate Johnson. Later, it was determined that Johnson's cause of death was drowning due to a seizure.

{¶ 7} Contessa Hoskins, as executor of Johnson's estate, filed a wrongful-death and survivorship action against Cleveland, Hameed, Hill, and other employees or agents of the city who worked at the recreation center at the time of the incident.[1] In its answer, the city asserted that the defendants were immune from liability under R.C. 2744.01 et seq. and that Johnson had signed a waiver releasing the defendants from liability for any injury suffered while at the recreation center. The city made the same arguments in its motion for summary judgment. In her opposition to the motion for summary judgment, Hoskins argued that an exception to immunity applied under R.C. 2744.02(B)(4). That section provides that "political subdivisions are liable for . . . death . . . that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function." *Id.*

{¶ 8} Hoskins supported her opposition with an affidavit in which an expert witness identified what he called "physical defects . . . within the pool area": the failure to use the lifeguard chair because Hameed could not sit in it comfortably and a blind spot created in the area where the drowning occurred because Hameed sat in the folding chair. Relying on that expert opinion, Hoskins argued that there was "a genuine issue of material fact as to whether the non-use of the elevated lifeguard chair in favor of a folding chair created a physical defect on the pool grounds." The trial court agreed that there was a genuine issue of material fact and denied the city's motion for summary judgment.

{¶ 9} The city appealed to the Eighth District. The court of appeals affirmed the trial court's judgment. The court largely relied on its earlier decision

---

1. Hoskins later dismissed the complaint with respect to all defendants except Cleveland and Hameed.

in *Kerber v. Cuyahoga Hts.*, 2015-Ohio-2766, ¶ 26 (8th Dist.), in which it had concluded that there was a "genuine issue of material fact as to whether the use of [a] low deck lifeguard chair created a physical defect" on the grounds of the pool that was at issue in that case. *See* 2023-Ohio-3149 at ¶ 20-22 (8th Dist.). We accepted Cleveland's appeal on one proposition of law:

> The use of a low deck lifeguard chair and non-use of an available elevated chair cannot constitute a physical defect within or on the grounds of buildings used in connection with governmental functions to establish an exception to political subdivision immunity under R.C. 2744.02(B)(4).

*See* 2024-Ohio-163.

## ANALYSIS

{¶ 10} A political subdivision and its employees are generally immune from liability related to governmental functions. R.C. 2744.02(A)(1). This general immunity is subject to exceptions. R.C. 2744.02(B). When an exception applies, immunity can be reinstated if the political subdivision establishes one of the defenses found in R.C. 2744.03(A). *See McConnell v. Dudley*, 2019-Ohio-4740, ¶ 21-23.

{¶ 11} Cleveland is a political subdivision, R.C. 2744.01(F), and the operation of a swimming pool is a governmental function, R.C. 2744.01(C)(2)(u)(iv). Therefore, Cleveland is entitled to immunity from liability under R.C. 2744.02(A) unless an exception applies. The question here is whether Cleveland's immunity is removed by one of the exceptions in R.C. 2744.02(B).

{¶ 12} The Eighth District concluded that there was a genuine issue of material fact about whether the use of the non-elevated folding chair created a physical defect on the pool grounds such that Cleveland's immunity was removed

by the exception set out in R.C. 2744.02(B)(4). 2023-Ohio-3149 at ¶ 22-23 (8th Dist.). As noted above, that provision removes a political subdivision's immunity when "injury, death, or loss to person or property [1.] that is caused by the negligence of [the political subdivision's] employees and [2.] that occurs within or on the grounds of, and [3.] is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function." R.C. 2744.02(B)(4).

{¶ 13} With respect to the first element under R.C. 2744.02(B)(4), the court of appeals concluded that there was a genuine issue of material fact about whether Hameed acted not only negligently but recklessly when she chose to sit in the folding chair instead of the elevated lifeguard chair. 2023-Ohio-3149, ¶ 26 (8th Dist.). That conclusion is not at issue in this appeal. And the parties agree that Johnson's death occurred on the grounds of a pool operated by the city. The issue in dispute is whether there is a genuine issue of material fact about whether Johnson's death was due to a physical defect within or on the grounds of the pool.

{¶ 14} We review the trial court's denial of a motion for summary judgment de novo. *Bliss v. Johns Manville*, 2022-Ohio-4366, ¶ 12. "[S]ummary judgment shall be granted when the filings in the action, including depositions and affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 24; Civ.R. 56(C).

{¶ 15} Hoskins notes several facts that may be in dispute. She questions whether Johnson's regular swimming routine involved bobbing up and down and blowing bubbles. She highlights Hameed's disciplinary record during Hameed's time working as a lifeguard for the city and the expert witness's opinion that Hameed's response to the drowning incident was insufficient. But those facts are not material to the question before us—whether Johnson's death was due to a physical defect on the grounds of the swimming pool. To survive Cleveland's

motion for summary judgment, Hoskins needed to set forth facts demonstrating a genuine issue of material fact about whether Johnson's death was due to a physical defect on the pool grounds.

{¶ 16} "Physical defect" is not defined in R.C. 2744.01 et seq., so we accord it "its plain, everyday meaning," *Sharp v. Union Carbide Corp.*, 38 Ohio St.3d 69, 70 (1988). Dictionaries may guide us to the commonly understood meaning of the phrase. "Physical" is defined as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary." *Webster's Third New International Dictionary* (2002); *see also Black's Law Dictionary* (12th Ed. 2024) (defining "physical" as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"). A "defect" is "want or absence of something necessary for completeness, perfection, or adequacy in form or function." *Webster's*; *see also Black's* (defining "defect" as "[a]n imperfection or shortcoming, esp[ecially] in a part that is essential to the operation or safety of a product"). Putting the definitions of these terms together, a "physical defect" can be reasonably understood as a tangible imperfection that impairs the function of an object.

{¶ 17} In addition to questioning Hameed's attentiveness to a swimmer known to have epilepsy and her response time during the drowning incident— again, issues immaterial to the question before us—Hoskins's expert noted what he called "physical defects . . . within the pool area":

> a. specifically, the lifeguard chair was not used because Lifeguard Hameed could not sit in it comfortably and because this lifeguard chair was generally uncomfortable;
>
> b. furthermore, there was a blind spot in the area where the drowning occurred by virtue of Lifeguard Hameed using a folding chair in a position that was obstructed by the unused lifeguard chair.

{¶ 18} Hoskins does not contend that the folding chair was physically defective. She does, however, argue that the *lifeguard* chair was physically defective, because it was uncomfortable for the lifeguards to sit in. Hameed stated that she had used the lifeguard chair on occasion but that her regular practice was to use the folding chair. And Hill explained that when he was on duty as a lifeguard, he would sit in both the lifeguard chair and the folding chair. According to Hill, the lifeguard chair would get uncomfortable because "it's a little firmer." "Firm" and "uncomfortable" are not, however, equivalent to being physically defective for purposes of R.C. 2744.02(B)(4). No tangible imperfection prevented the lifeguard chair from functioning as a chair.

{¶ 19} Moreover, Hoskins's expert did not opine that either of the chairs was physically defective. Instead, he focused primarily on Hameed's decision not to use the lifeguard chair because it was uncomfortable. But a decision is not a tangible imperfection. The expert also concluded that a blind spot was created by Hameed's use of the folding chair and that her view was obstructed by the lifeguard chair and objects hanging on it. This is not a physical defect either. If Hameed's view was obstructed by the lifeguard chair and objects hanging on it, that was caused not by a tangible flaw in the lifeguard chair on the pool grounds but by Hameed's decision to sit in the folding chair. The chair and pool grounds could still function as intended. *See Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 38 (Kennedy, J., dissenting) ("the lack of a fire extinguisher or other safety device did not render the science classroom defective, because the classroom functioned as intended and as it was designed") Considered in the light most favorable to Hoskins, none of the circumstances cited by her expert constitute what is commonly understood to be a physical defect.

{¶ 20} Hoskins points to this court's lead opinion in *Greenville*, in which three justices agreed that the absence of a fire extinguisher or other safety equipment in a classroom within a building of a political subdivision could be a

physical defect under R.C. 2744.02(B)(4). *Greenville* at ¶ 1, 28 (lead opinion). In Hoskins's view, as stated in her merit brief, that reasoning in *Greenville* "is entirely consistent with [her] position that the lack of an <u>effective</u> lifeguard chair that [Hameed] could comfortably utilize to view the entire pool" was a physical defect on the pool grounds. (Underlining in original.) Of course, as discussed above, there was no evidence presented that the lifeguard chair was ineffective. And while it is true that our reasoning here could be read to conflict with that of the lead opinion in *Greenville,* the reasoning of the lead opinion in that case did not rely on the plain meaning of R.C. 2744.02(B)(4). Moreover, the opinion garnered the votes of only three justices and so should not be relied upon. *See Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633 (1994) (noting that a plurality opinion was of "questionable precedential value" because it had "failed to receive the requisite support of four justices of this court in order to constitute controlling law").

## CONCLUSION

{¶ 21} The commonly understood meaning of "physical defect" is a material imperfection that impairs the quality, function, or utility of something. No evidence of a tangible imperfection with respect to the lifeguard chair or pool area was presented. The exception to political-subdivision immunity in R.C. 2744.02(B)(4) does not apply. We therefore reverse the judgment of the Eighth District Court of Appeals and remand the case to the trial court for entry of summary judgment in favor of Cleveland.

Judgment reversed

and cause remanded to the trial court.

_____

**KENNEDY, C.J., concurring.**

{¶ 22} I join the majority opinion, and I agree that none of the reasoning of the lead opinion in *Doe v. Greenville City Schools*, 2022-Ohio-4618, constitutes a holding of the court since four justices declined to join it. *See Fed. Home Loan*

*Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 29, citing Ohio Const., art. IV, § 2(A).

{¶ 23} Nonetheless, *Greenville* will no doubt be cited for its limited precedential value. *See State ex rel. Ware v. Fankhauser*, 2024-Ohio-5037, ¶ 20 (noting the "limited precedential authority" of a plurality decision). In a case with the same facts as those in *Greenville*, i.e., where an injury is allegedly caused by the failure to provide a fire extinguisher and other safety equipment in a school classroom, appellate judges will likely feel bound to hold that a political subdivision is not immune from suit. Even in a case involving a different set of facts, the Third District Court of Appeals "treat[ed] [*Greenville*] as highly persuasive, if not binding, authority." *Lewis v. Ayersville Local School Dist.*, 2023-Ohio-3685, ¶ 21, fn. 2 (3d Dist.).

{¶ 24} This court has discretion to decide what weight should be given to a plurality opinion. *See NASCAR Holdings, Inc. v. Testa*, 2017-Ohio-9118, ¶ 18. Because *Greenville* was wrongly decided, I would overrule it today and end any confusion regarding its precedential value.

———————————————

**BRUNNER, J., dissenting.**

{¶ 25} This is an action brought by the executor of decedent William Johnson's estate against the City of Cleveland after Johnson died while swimming at a Cleveland recreation-center pool. I would affirm the Eighth District Court of Appeals' judgment affirming the trial court's denial of the city's summary-judgment motion asserting immunity under R.C. Ch. 2744. In my view, there remains a genuine issue of material fact about whether Johnson's death was due to a "physical defect" in the building or on the grounds of the recreation center, as that term is used in R.C. 2744.02(B)(4).

## BACKGROUND

{¶ 26} Johnson's tragic death occurred during a visit to the city's Thurgood Marshall Recreation Center, a facility that he visited regularly. Plaintiff-appellee, Contessa Hoskins, the executor of Johnson's estate, brought a wrongful-death and survivorship action seeking damages against the city as well as several other defendants not relevant to this appeal. The city moved for summary judgment on various grounds, including political-subdivision immunity, as set forth in R.C. 2744.02(A)(1). Hoskins opposed the motion, asserting in part that the "physical defect" exception to municipal immunity provided in R.C. 2744.02(B)(4) applied. The trial court denied the motion, concluding that genuine issues of material fact remained.

{¶ 27} The city appealed, arguing in part that the trial court erred by determining that there were genuine issues of material fact as to whether the physical-defect exception applied. The Eighth District affirmed the trial court's judgment, finding in relevant part that a dispute of material fact remained "as to whether the use of the low folding chair created a physical defect at the pool grounds." 2023-Ohio-3149, ¶ 22 (8th Dist.). Reviewing the trial court's judgment de novo, the court of appeals reached its conclusion based on (1) the testimony of Hoskins's expert, Dr. Francesco A. Pia, who opined that a physical defect existed at the pool, (2) the testimony of lifeguard Nieemah Hameed that she had to get out of a folding chair in order to observe Johnson, and (3) the court's relevant precedent. *Id.*

## ANALYSIS

{¶ 28} Political-subdivision immunity is not absolute and may be overcome when any of the five exceptions to immunity listed in R.C. 2744.02(B)(1) through (5) is applicable. The exception relevant here is set forth in R.C. 2744.02(B)(4), which states:

> [P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to *physical defects* within or on the grounds of, buildings that are used in connection with the performance of a governmental function . . . .

(Emphasis added.)  R.C. 2744.02(B)(4) requires that two separate elements be met: the injury at issue must be due to both (1) a political subdivision's employee's negligence and (2) a physical defect "within or on the grounds of[] buildings that are used in connection with the performance of a governmental function."  The limited issue before this court is whether, when the evidence is considered in the light most favorable to Hoskins in the context of Civ.R. 56, *see Smathers v. Glass*, 2022-Ohio-4595, ¶ 32, Johnson's death could reasonably be found to have been due to a physical defect within the recreation-center building under R.C. 2744.02(B)(4).

*Relevant testimony*

{¶ 29} I accept the facts and procedural history of this case as stated by the majority, but I add the following.  Hoskins offered the testimony of Dr. Pia, an aquatics-safety expert, who stated in his affidavit that he had reviewed all of the relevant information gathered during discovery and opined that Hameed's view was obstructed when she sat in a low folding chair instead of the elevated lifeguard chair and that the use of the folding chair created a physical defect on the pool grounds.

{¶ 30} Hameed testified that on the day of Johnson's death, she was seated in a portable, low folding chair on the pool deck instead of the designated elevated lifeguard chair.  The elevated chair had various objects hanging from it that, according to Dr. Pia, obstructed Hameed's view from her low-level position.  Hameed stated that she saw Johnson doing what she described as his "normal routine" as she scanned the pool from her seat in the folding chair.  She said that

she stood up twice while Johnson was swimming. Hameed stated that the first time she stood up, she was able to see him "sitting at the bottom of the pool . . . blowing bubbles," and that after she sat back down, he surfaced again. Once she was unable to see Johnson again, she got up from the folding chair a second time, walked over to the deep end of the pool, and looked down into the water, at which time she saw Johnson "laying on his back looking up" and "didn't see any bubbles." Johnson was removed from the pool, but attempts to save his life were not successful.

{¶ 31} While the lifeguards had been trained to sit in the elevated chair positioned at the edge of the pool, Hameed used the portable, low folding chair because the elevated chair was "a little smaller than" she was. Unlike the fixed, elevated lifeguard chair, the folding chair could be positioned anywhere.

{¶ 32} While Hameed stated that it was her "regular routine and practice" to use the folding chair, she was not the only lifeguard who used the folding chair. Another lifeguard, Rod-El Hill, stated that he, too, sometimes used the folding chair because the elevated chair "gets uncomfortable." The lower, portable folding chair could be positioned anywhere and not necessarily at the pool's edge like the elevated chair. Dr. Pia stated, "Hameed's view was obstructed by her low-level deck chair position and the lifeguard station." He explained: "There was a blind spot in the area where the drowning occurred by virtue of Lifeguard Hameed using a folding chair in a low-level position that was obstructed by the unused lifeguard chair with objects hanging from it." Dr. Pia stated that in his professional opinion, this arrangement "created a "physical defect on the pool grounds." He also commented on Hameed's poor positioning in the low folding chair and her resulting inability to properly monitor the entire pool.

*Genuine issue of material fact*

{¶ 33} In light of the testimony describe above, I would find that a genuine issue of material fact remains as to whether Johnson's death was due to a physical defect on the pool grounds. First, under the reasoning of the lead opinion in *Doe v.*

*Greenville City Schools*, 2022-Ohio-4618, the absence of a properly functional lifeguard chair could be considered a physical defect. In *Doe*, three members of this court concluded that the absence of a fire extinguisher or other safety equipment within a building of a political subdivision, in that case a high-school science classroom, could be a physical defect within the meaning of R.C. 2744.02(B)(4). *Id.* at ¶ 27 (lead opinion).

{¶ 34} Here, both the majority opinion and the concurring opinion note that under this court's case law, *Doe*'s precedential value is limited because the lead opinion garnered only three votes. In my view, however, the reasoning of the lead opinion in *Doe* is sound. Relying on *Doe*, one could conclude that the absence of a properly functional chair (or other safety equipment) at the Thurgood Marshall Recreation Center pool could itself be reasonably found to be a physical defect under R.C. 2744.02(B)(4). The building at issue here is, after all, a community-center swimming pool. The record contains evidence indicating that the lifeguard on duty routinely used the low folding chair, which lacked appropriate sight lines, and that she did so because the elevated chair was too small for her. Notably, at least one other lifeguard at times also used the low folding chair that lacked adequate sight lines of the pool. So, on the day of Johnson's drowning, one chair was too small for the lifeguard on duty and the other chair lacked adequate sight lines to the deep end of the pool. Surely, the absence of a properly functional lifeguard chair for use by the lifeguard on duty at a city pool could reasonably be found to be a physical defect in the building.

{¶ 35} But on closer review, reliance on *Doe* is not necessarily required in this case. Even if *Doe* were disavowed today, as urged in the concurring opinion, denial of summary judgment would still have been appropriate. In *Doe*, the central fact was *the absence* safety equipment, 2022-Ohio-4618, at ¶ 27-28; here, there is both an absence of a properly functional chair or other safety equipment and also the presence of two chairs, both of which were flawed. The elevated stationary

chair was not in use, because it was too small for Hameed, who routinely did not use it. The other chair—which was available at the recreation center and used by Hameed as her "regular routine and practice," including on the day at issue (and at least sometimes by another lifeguard, Hill)—failed to provide adequate sight lines of the entire swimming pool. I would conclude that one or both of the chairs as described in the record below, both of which were in the building and either routinely or sometimes utilized by employees there, could reasonably be found to be a physical defect for purposes of R.C. 2744.02(B)(4). Thus, a genuine issue of material fact remains as to whether Johnson's death was due to a physical defect on the grounds of the recreation center.

{¶ 36} The definitions cited in the majority opinion do not make it any less reasonable to conclude that one or both of the chairs constituted a "physical defect" in the building, in light of common understanding of the term based on common usage. Each chair is certainly a "'material thing[]'" and "'a real, tangible object,'" *see* majority opinion at ¶ 16 (discussing definitions of "physical" in *Webster's Third New International Dictionary* (2002) and *Black's Law Dictionary* (12th Ed. 2024)). And each chair could reasonably be found to lack "*something necessary for* completeness, perfection, or *adequacy in* form or *function*" (emphasis added), *see id.* (discussing definitions of "defect" in *Webster's* and *Black's*).

{¶ 37} Due to its physical characteristics—namely, its size—the elevated chair lacked something necessary for it to *adequately function* for its intended purpose: use by the lifeguard on duty to observe the pool. The folding chair that was available to, and utilized by, the lifeguard on duty on the day of Johnson's death lacked appropriate dimensions to *adequately function* for its intended purpose. Its physical characteristics did not meet the essential attributes necessary for its operation for its intended function. The folding chair's characteristics, including its portability and its dimensions—especially its height or lack thereof— surely allow it to fall within the above-quoted definitions of "physical defect"

because either of those characteristics prevents the chair from functioning for its intended purpose: to provide adequate sight lines of the pool. While some "'physical defect[s]' can be reasonably understood as . . . tangible imperfection[s] that impair[] the function of an object," as proffered by the majority opinion, majority opinion at ¶ 16, a physical defect could equally be understood, based on the cited definitions, to encompass an object that fails to function for its intended purpose due to its physical characteristics. Evidence submitted in the form of Dr. Pia's testimony demonstrates that use of the low folding chair created a blind spot that prevented a full view of the pool, failed to provide adequate sight lines due to its physical dimensions, and was a "physical defect" as contemplated in R.C. 2744.02(B)(4). The folding chair was inadequate for its intended function due to its physical characteristics.

{¶ 38} The term "physical defect" in R.C. 2744.02(B)(4) need not be constricted by the majority opinion's narrow approach. Determining the scope of what qualified as a physical defect in Johnson's situation is within the province of a jury, and it is not for this or any other court to determine in reviewing the evidence on a motion for summary judgment under Civ.R. 56. Moreover, the majority opinion's excessively narrow reading of the term "physical defect" reduces its meaning, *as a matter of law*, well beyond common understanding and common usage—even given the dictionary definitions it relies on.

## CONCLUSION

{¶ 39} For the reasons explained above, I would find a that genuine issue of material fact remains as to whether Johnson's death was due to a physical defect in the City of Cleveland's Thurgood Marshall Recreation Center and, consequently, as to whether the city's asserted political-subdivision immunity could be overcome by the "physical defect" exception contained in R.C. 2744.02(B)(4). Accordingly, I would affirm the judgment of the Eighth District Court of Appeals, and I therefore respectfully dissent.

—————————

Ciano & Goldwasser, L.L.P., and Andrew S. Goldwasser; and Flowers & Grube, Paul W. Flowers, and Kendra N. Davitt, for appellee.

Mark D. Griffin, Cleveland Director of Law, and James R. Russell, Jr., and Gilbert E. Blomgren, Assistant Directors of Law, for appellant.

—————————